Argued October 8, decided October 22, 1912.

**PALMBERG *v.* ASTORIA.**

(127 Pac. 32.)

**Municipal Corporations—Initiative Petition—Ordinance—Printed Copy—Error.**

Astoria City Ordinance No. 3315, Section 9, relating to the initiative power, provides that the auditor and police judge shall cause to be printed a true copy of the title and text of an ordinance to be submitted to a referendum vote or amendment, and that it shall be their duty to furnish a printed copy of such measure to any person offering to register as an elector in such city. Held, that where a proposed ordinance for the organization of a sanitary and reclamation district involving the expenditure of a large sum of money to be raised by assessment and managed by a commission composed of particular individuals, as printed for the voters, misstated the name of one of the members of the commission as the same appeared in the initiative petition, the defect was fatal.

From Clatsop:   JAMES U. CAMPBELL, Judge.

This is a suit by Charles G. Palmberg and G. C. Flavel, against Alfred Kinney, W. C. Logan, W. E. Schimpff,

W. P. O'Brien, Norris Staples, Martin Franciscovich, E. Hauke, Andrew Birch and Jens H. Hansen, as and composing the Reclamation and Sanitary Commission of the City of Astoria. From a decree in favor of defendants, plaintiffs appeal.          REVERSED: DECREE RENDERED.

For appellants there was a brief over the names of *Mr. A. W. Norblad* and *Mr. George C. Fulton,* with an oral argument by *Mr. Fulton.*

For respondents there was a brief over the names of *Messrs. John H.* and *Albert M. Smith,* with an oral argument by *Mr. Albert M. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the plaintiffs from a decree dismissing their suit instituted to enjoin the Sanitary and Reclamation Commission of the City of Astoria from constructing retaining walls, filling tide flats, levying assessments, and issuing bonds to defray the expenses of making such improvements, and to have an alleged amendment of the municipal charter decreed to be null and void. The question to be determined is whether or not the proceedings undertaken to amend the charter of the City of Astoria, initiated by petition and asserted to have been adopted by a majority vote of the qualified electors of that city, were such a departure from the mode prescribed as to invalidate the proposed measure. It appears from the evidence that the common council of Astoria, exercising the authority reserved by Section 1*a* of Article IV of the organic laws of the State, enacted Ordinance No. 3315, prescribing the form of an initiative petition, and providing that 200 legal voters were required to inaugurate any measure to be ratified or rejected at a general election. Section 6 of the ordinance declares generally that immediately upon the filing of an adequate petition the auditor and police judge is required to cause notice thereof, with a brief statement

of the terms and effect of the application, to be given by publication for eight consecutive days in a daily newspaper printed and published in Astoria. Section 9 of such municipal law enacts, in the main, that the auditor and police judge cause to be printed a pamphlet containing a true copy of the title and text of any amendment of the charter, proposed by initiative, and to furnish a printed copy thereof to any person offering to register as an elector.

Complying with the requirements of such ordinance and pursuant to a resolution of the common council, the mayor of Astoria appointed a committee, consisting of 17 qualified electors, to prepare an amendment to the city charter, to be voted upon at the general election held December 14, 1910. The persons thus appointed performed the duty required of them, and in the contemplated alteration of the fundamental law of the municipality declared it to be essential that the tide lands within the city be reclaimed by filling the flats above high water; that retaining walls be constructed within the municipal limits for the purpose of holding such fills; that city bonds be issued and sold to defray the expense of making such betterments; that improvement districts be established; and that all acts necessary to be done or performed in carrying out the proposed changes should be exercised by nine resident taxpayers composing a body to be known and styled as "the Sanitary and Reclamation Commission of the City of Astoria." The proposed amendment stated the names of the designated number of persons chosen by the committee as commissioners, including that of Frans Kankkonen. The contemplated measure provided that five of the persons so selected should constitute a quorum for the transaction of business, and that, if either of such electors failed or refused to qualify or serve as a commissioner, the majority of the members should appoint another tax-

payer to fill the vacancy.   When the proposed amend-
ments were completed, an initiative petition was also
prepared and signed by 11 of the committee, who mutu-
ally agreed that, if Kankkonen refused to act as a mem-
ber of the commission, the name of Guy W. Spicer should
be substituted in lieu thereof.   When the petition was
presented to Kankkonen, he drew a pencil line through
his name, and refused to act as one of the commission-
ers.   Five other names were added to the petition before
Spicer's name was written in the place of Kankkonen's,
and thereafter 196 other electors subscirbed their names
to the application, so that by omitting the five names
which were obtained without their being notified that
Spicer would be a commissioner, and including the 11
who had agreed upon the substitution if necessary, 207
petitioners were secured with knowledge that Spicer was
to be a member of the commission instead of Kankkonen.
Upon the filing of the petition, the auditor and police
judge determined that it had been signed by more than
the requisite number of legal voters and filed within the
time limited.   He then caused a notice, declaring that
the petition had been filed, and containing a brief state-
ment of its tenor and effect, to be published in the Morn-
ing Astorian, a daily newspaper printed and published
at Astoria, in all the regular issues from November 12,
1910, to the 24th of that month both included, except
that on Monday the 21st the paper was not published
or printed nor on any other Monday.   The auditor and
police judge also caused to be printed and sent out to
the legal voters a pamphlet containing what purported
to be a true copy of the proposed amendment to the
charter, but the booklet inadvertently  contained  the
name of Kankkonen as one of the commissioners and
the name of Spicer was omitted.   At the general election
held at the time specified a majority of all the votes hav-
ing been cast in favor of the proposed amendment, the
alteration was declared to have been duly adopted. Spicer,

Sig. 8

however, refused to qualify, whereupon a majority of the commissioners appointed to fill the vacancy the defendant Jens H. Hansen. The commission having adopted plans for making the specified improvements, this suit was begun and resulted in the decree hereinbefore mentioned.

Plaintiff's counsel particularly point out in their brief the alleged facts in the procedure which they assert render the proposed amendment to the city charter invalid. We shall consider only the pamphlet which inadvertently contained Kankkonen's name as one of the members of the Sanitary and Reclamation Commission of the City of Astoria, when more than 200 legal voters of that municipality had by their petition recommended Spicer for the position. It will probably be conceded that if persons of good repute and business sagacity are selected to manage public improvements, requiring the outlay of vast sums of money to be raised by assessment of real property benefited and from the issuing of municipal interest-bearing bonds, the measure providing therefor, when initiated by petition, will undoubtedly receive more support and be entitled to greater confidence than when such public work is supervised by persons of inexperience or of doubtful probity. The owner of real property might favor a local improvement that would burden his land if he knew that the money obtained for that purpose by assessment or in any other manner would be wisely expended. If he had doubts in regard to the disbursement of the fund, he would probably hesitate before ratifying a measure, initiated by petition, that would be a charge upon his real property, or he might vote against an amendment of a city charter, when inaugurated in the same manner, if it imposed an exaction upon his premises. Section 9 of Ordinance No. 3315 prescribing the manner of exercising the initiative powers, as far as deemed material herein, reads as follows:

"The auditor and police judge shall, not later than the third Wednesday of the first month next before any general election at which any proposed ordinance or amendment to the charter of the City of Astoria is to be submitted to the people, cause to be printed a true copy of the title and text of such ordinance or amendment to be submitted with the number and form in which the question shall be printed on the official ballot. * * It shall be the duty of the auditor and police judge to furnish a printed copy of any measure proposed by initiative or referred to the people by referendum to any person offering to register as an elector of said city."

It will be seen that the pamphlet thus required to be printed is a species of notice, a perusal of which by the legal voters of an incorporated town or city informs them of the privileges expected to be bestowed or the burdens contemplated to be imposed by an ordinance or amendment of the city charter. The provisions of Ordinance No. 3315, regulating the procedure initiated by petition, having demanded the printing of "a true copy of the title and text of each ordinance or amendment to be submitted," was not observed in the particulars specified. The failure in this respect having been a want of notice, the defect is fatal. *Wright* v. *McMinnville,* 59 Or. 397 (117 Pac. 298) ; *State ex rel.* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292).

The decree will therefore be reversed, and one entered here granting the relief prayed for in the complaint, the plaintiffs to recover their costs and disbursements in both courts.      REVERSED: DECREE RENDERED.