Argued September 1, dismissed September 15, 1914.

## STATE EX REL. *v.* DALLES CITY.*

### (143 Pac. 1127.)

**Municipal Corporations—Ordinances—Initiative and Referendum.**

1. Under Article IV, Section 1a, of the Constitution, reserving to the legal voters of every municipality the initiative and referendum powers as to all municipal legislation, and Article XI, Section 2, giving the legal voters of every city and town power to enact and amend their municipal charter, a provision of an ordinance, providing for the exercise of the initiative and referendum, but restricting the signing of initiative petitions to registered voters, is invalid.

[As to self-executing provisions of Constitution, see note in Ann. Cas. 1914C, 1116.]

**Municipal Corporations—Ordinances—Partial Invalidity.**

2. The invalidity of a provision in an ordinance restricting the signing of initiative petitions to registered voters does not vitiate remaining sections of the ordinance providing the manner of exercising the initiative and referendum.

**Evidence—Presumptions—Performance of Official Duty.**

3. On an issue as to the adoption of an amendment to a city charter by initiative proceeding, where the ordinance governing the proceeding requires the recorder to prepare the ballot title for any initiative measure, it will be presumed, in the absence of evidence, that the recorder's official duty was regularly performed.

**Municipal Corporations—Ordinances—Construction and Operation.**

4. Where a city charter provides for the taking effect of any ordinance on its passage and approval by the mayor, the fact that an ordinance providing for the exercising of the initiative and referendum was not posted or published does not render the ordinance invalid.

[As to general limitation upon power to enact ordinances, see note in 34 Am. Dec. 627.]

---

*Upon the question of the initiative and referendum, see notes in 11 L. R. A. (N. S.) 1092, 33 L. R. A. (N. S.) 969, and 50 L. R. A. (N. S.) 195.          REPORTER.

Municipal Corporations—Charter—Amendment—Initiative and Referendum.

5. Where an ordinance requires the publication of a proposed initiative measure before a certain time, the failure to publish a charter amendment, proposed by initiative, at the required time vitiates the amendment, though the fact that it would be voted on was fully advertised.

Municipal Corporations—Charter—Enacting Clause—"Ordain."

6. The enacting clause of a charter amendment, "The people of Dalles City do ordain as follows," is sufficient; the term "ordain" being equivalent to "be it enacted," or any like expression.

Municipal Corporations—Ordinances—Enacting Clause.

7. Article IV, Section 1, of the Constitution, requiring the style of all bills to be, "Be it enacted by the people of the State of Oregon," applies only to measures adopted by the legislative assembly or the people of the whole state, and not to municipal legislation or charter.

Municipal Corporations — Ordinances — Initiative and Referendum — Repeal.

8. The mere fact that a city charter is amended by initiative by the use of the word "ordain" does not empower the council to repeal the amendment as it would an ordinance passed by itself.

[As to implied power to repeal ordinance, see note in Ann. Cas. 1913D, 768.]

Municipal Corporations—Ordinances—Validity.

9. The question of the wisdom of municipal legislation proposed by initiative or of difficulties in its execution does not affect the question of its validity.

Original proceedings in Supreme Court.

In Banc. This is an original proceeding in *mandamus* by the State, on the relation of Peter Fleck, against Dalles City, Oregon, a municipal corporation; F. A. French, as mayor; Ed. Hostetler, as recorder; and A. S. Esson, E. M. Williams, E. O. McCoy, C. M. Grimes, Jos. Kirchhoff, Ed. Ball and F. A. Seufert, Jr., as councilmen of said city, and C. L. Darnielle and W. E. Walther.                            WRIT DISMISSED.

For the plaintiff there was a brief over the names of *Messrs. Bright, Bryant & Ellis* and *Mr. Wells A. Bell,* with oral arguments by *Mr. Cornelius J. Bright* and *Mr. M. G. Ellis.*

For the defendants there was a brief with oral arguments by *Mr. C. L. Pepper* and *Mr. William H. Wilson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

This is an original proceeding in *mandamus* directed to Dalles City, a municipal corporation, and to its mayor, recorder and councilmen. The recitals of the alternative writ disclose that the relator, a resident inhabitant, citizen, taxpayer and voter of the city within the first ward proposed by the charter amendment in question, voted for and signed an initiative petition for that measure. It appears that on February 20, 1914, one M. G. Ellis, as president of a committee of 100 of The Dalles, inquired of the city recorder whether any ordinance had ever been passed or law adopted providing for the manner of exercising the initiative and referendum powers as to municipal legislation, and was informed that there was no such enactment. Afterward, on February 28, 1914, Ellis filed with the recorder a form of petition to which was attached a full copy of the title and text of the proposed charter amendment, and the recorder directed it to be circulated. On March 3, 1914, an initiative petition signed by 462 legal city electors, asking that the measure be put upon the ballot at the next general election, was filed with the recorder. On the same day the council referred the petition to its judiciary committee, and took no further action thereon until after the general election held in the city June 15, 1914. It is said in the writ that on May 15, 1914, a ballot title was filed with the recorder and approved by the city attorney. It is stated that on June 6, 1914, the mayor and recorder mailed to each legal voter residing in the city, so far as they could ascertain, and as shown by the registration

books of said county of Wasco, to the number of about 1,850 voters, pamphlets containing a full copy of the title and text of the amendment, together with the ballot title thereof, with numbers and form as the same appeared on the official ballots at the election. It is recited also that at the regular city election held on June 16, 1914, 1,826 votes were cast, of which 1,507 were votes upon the amendment; there being in favor of the measure 793, and against the same 714. This result was canvassed, and on June 22, 1914, the mayor issued his proclamation declaring the proposed amendment effective as a part of the city charter. In the rehearsals of the writ it appears that on May 28, 1914, it was discovered by the friends of the measure that on April 3, 1907, the council had passed, and the mayor had approved, an ordinance styled "Special Ordinance No. 417," prescribing the manner in which the initiative function should be exercised in municipal legislation for Dalles City. This measure was entitled:

"An ordinance to provide for carrying into effect in Dalles City the initiative and referendum powers reserved to the legal voters of municipalities by Section 1a of Article IV of the Constitution of the State of Oregon, and to enact and amend their municipal charters reserved to the legal voters of cities and towns by Section 2 of Article XI of the Constitution of the State of Oregon, and providing penalty for violations of this act."

Among other requirements of the act it prescribes the following:

"When any measure for initiative or referendum legislation shall be filed by the recorder, after the number and genuineness of signatures thereto, as provided by Section 5, have been ascertained, he shall within five days provide a ballot title for such measure."

Another requirement is found in Section 8 to the effect that:

"The recorder shall, after verifying the number and genuineness of the signatures, forthwith and not later than twenty days before the election, cause the full text and ballot title and number of each measure to be printed in such newspaper published in Dalles City as shall be designated by the council, for two consecutive publications."

The writ discloses that immediately upon the discovery of Special Ordinance No. 417, and notwithstanding the fact that the council had refused to take any action concerning the charter amendment in question, and had failed to designate any newspaper in which to publish initiative measures, the recorder proceeded to have the same published with its ballot title in the next two issues of The Dalles "Daily Chronicle," a daily newspaper of general circulation in said city. These publications were on May 28 and 29, 1914. It is said also that when the initiative petition was filed with the recorder about March 4, 1914, the "Daily Chronicle" "published the title and text of said amendment substantially in full in said paper on the front page in the most conspicuous part of said paper, with headlines set in large type and editorial comment added." Again it is narrated:

"That beginning about 12 days before the said city election, held on June 15, 1914, the said committee of 100 had said affirmative argument, together with the ballot title of said measure, printed in 10 consecutive issues of the said Dalles 'Daily Chronicle' before said election; that about four days before said election said committee deposited in the United States postoffice in said city envelopes containing pamphlets and circulars on which were printed said affirmative argument and · ballot title with other matter and information concerning said election and amendment, postpaid, and ad-

dressed to each legal voter residing in said city, in so far as said committee had knowledge, and as shown by the registration in the office of the county clerk of said county to the number of about 1,850 voters."

The proposed amendment is here set out in full:

"Charter Amendment.

"An amendment to the charter of Dalles City, Oregon, amending sections 4, 5, 6 and 9 thereof; dividing said city into five wards; fixing representation in the council and on the board of water commissioners and terms of office; and repealing all acts and parts of acts in conflict herewith.

"The people of Dalles City do ordain as follows:

"Section 1. That section 4 of the charter of Dalles City, Oregon, being an act of the legislative assembly of the State of Oregon, approved February 17, 1899, be, and the same is, hereby amended to read as follows: 'Sec. 4. For purposes of municipal representation, Dalles City is hereby divided into five wards, designated and bounded as follows: (1) The first ward shall consist of all that part of Dalles City east of the middle line of Monroe and G Streets and of a continued line from each outer end of said street to the city limits and of the shortest line connecting said streets; (2) the second ward shall consist of all that part of Dalles City west of said first ward and east of the middle line of Laughlin and C Streets and of a continued line from each outer end of said streets to the city limits and of the shortest line connecting said streets; (3) the third ward shall consist of all that part of Dalles City west of said second ward and east of the middle line of Court Street and of a continued line from each end of said street to the city limits; (4) the fourth ward shall consist of all that part of Dalles City west of said third ward and east of the middle line of Pentland Street and of a continued line from each end of said street to the city limits; (5) the fifth ward shall consist of all that part of Dalles City west of the middle line of Pentland Street and of a continued line from each end of said street to the city limits.'

"Sec. 2.   That section 5 of said charter be, and the same is, hereby amended to read as follows: 'Sec. 5. Each ward is entitled to two members of the council and to two members of the board of water commissioners.'

"Sec. 3.   That section 6 of said charter be, and the same is, hereby amended to read as follows: 'Sec. 6. The terms of office of mayor and treasurer shall continue one year, and the term of office of councilman and water commissioners shall continue two years. from the first Monday in July after their election and until their successors are elected and qualified.'

"Sec. 4.   That section 9 of said charter be, and the same is, hereby amended to read as follows: 'Sec. 9. A regular election shall be held in Dalles City on the third Monday of June of each year for the purpose of electing a mayor and a treasurer for the city and a councilman and a water commissioner for each of said wards: Provided, that in order to establish the council and board of water commissioners on the new basis of representation as fixed by this amendment, it is hereby ordained: That each councilman elected or holding office at date of adoption of this amendment shall represent the new ward in which he resides at such date irrespective of the ward he is elected to represent, except as herein otherwise stated; that the term of office of all councilmen elected at said election for three years is hereby shortened to two years; that if as a result of such change in ward boundaries there shall be more than two councilmen in a ward then a councilman who received the larger affirmative vote of the people at his election shall take precedence over one who received a lesser vote and the term of office of any surplus councilman is hereby declared to have expired; that if any ward is wholly without representation then the council shall immediately call a special election for that ward, but if there is only one vacancy in the ward it shall be filled by appointment by the council; and that the water commissioners and their term of office shall be as hereinabove provided for councilmen.'

"Sec. 5. That all acts and parts of acts in conflict herewith are hereby repealed."

The result of the general election held on June 15, 1914, for the councilmen is set out, whereby it appears that two councilmen were elected in the new wards 3, 4 and 5, one in new ward 2, none whatever in the proposed new ward 1, and one in the new ward 3. McCoy and Williams received, respectively, 485 and 472 votes, and Darnielle and Walther received, respectively, 176 and 177 votes in new ward 3. Alleging in great detail the manner in which the council expressed its refusal to order an election for the purpose of choosing two councilmen in the proposed ward 1, the writ directs that body to call an election for that ward or show cause why they have not done so.

The defendants show cause by answer, claiming that they cannot call or hold any election under the amendment in question for sundry reasons:

(1) That the council itself is the judge of the qualifications and election of its own members, and that it has determined certain persons and none other to be such councilmen.

(2) That the amendment was attempted by ordinance only, and not by act, and is void for the reason that its enacting clause reads thus, "The people of Dalles City do ordain as follows," instead of using the enacting clause prescribed by Article IV, Section 1, of the Constitution of the state, as follows: "Be it enacted by the people of the State of Oregon."

(3) That the ordinance embodying the amendment in question has been repealed by subsequent ordinance of Dalles City.

(4) That the measure was not published for two consecutive publications in a newspaper designated by the council, not later than 20 days before the election,

nor at all, until long after the time prescribed for the publication.

(5) That the recorder did not provide a ballot title within five days after the filing of the measure, nor at all.

(6) That the ballot title is argumentative in that it ascribes the initiative of the measure to the committee of 100, whose friends would be influenced for and its enemies against the measure by that information.

(7) That the amendment is void for uncertainty, on account of the indefinite provisions in reference to calling and holding the special election provided for therein, in that it does not direct whether notice shall be given prior or subsequent to the election; that it has not specified the length of time for which notice of said election shall be given; that it does not in any manner prescribe the method of giving notice of said election or proving that notice thereof has been given; that it does not specify the length of time that the polls shall be kept open, the number of judges, the number of clerks thereof, or the manner of canvassing said returns. Other criticisms against the act imputing to it conflicting and irreconcilable provisions are urged, too numerous and in our judgment too trivial to require further notice.

The reply denies that the enacting clause embodied in the measure is for ordinances only but is likewise applicable to amendments to the charter, admits that the defendants have wholly failed to comply with the provisions of the charter amendment, and denies otherwise every allegation pleaded and set out in the defendants' answer. No testimony was offered by either party at the hearing.

1. A thorough sifting of the voluminous and discursive pleadings, replete as they are with argument

and conclusions of law, leaves the question to turn upon the regularity and validity of the adoption of the amendment in question.   It is provided in Section 1a, Article IV, of the state Constitution, as follows:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts.   The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.   Not more than 10 per cent of the legal voters may be required to order the referendum nor more than 15 per cent to propose any measure, by the initiative, in any city or town."

It is laid down in Article XI, Section 2, of the fundamental law of the state, that:

"The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

By the act of February 25, 1907 (Laws 1907, p. 405, § 10), the legislative assembly provided the manner in which the initiative and referendum powers might be exercised in city affairs.   It appears unchallenged by the record, however, that on April 3, 1907, the city council of Dalles City enacted, and the mayor of that municipality approved, Special Ordinance No. 417, to which allusion has been made.   It is contended in argument by the relator that section 5 of that ordinance is unconstitutional in that it restricts the recorder to the registration books in the office of the county clerk of Wasco County in determining the number and genuineness of the signatures and voting qualifications of the

persons signing the initiative petition.   It is substantially held in *Woodward* v. *Barbur,* 59 Or. 70 (116 Pac. 101), that the signing of initiative petitions cannot be restricted to registered voters because the Constitution awards that privilege to legal voters, and that there may be many legal voters who are qualified signers but not registered.

2, 3. This, however, does not vitiate the remaining sections of the municipal legislation, providing the manner of exercising the initiative and referendum functions.   That enactment plainly requires the recorder to prepare the ballot title for any initiative measure properly filed.   No testimony on that subject having been offered, that contention of the defendants may be rejected on the ground that we are authorized to presume that the recorder's official duty has been regularly performed.

4. We cannot thus dispense with the objection that the measure was not published in two consecutive issues of a newspaper to be designated by the common council not later than 20 days prior to the election at which the measure was to be submitted to the people. That defect appears upon the face of the writ and is urged by the answer.   It is substantially conceded that the supporters of the measure proceeded in ignorance of the ordinance prescribing the manner of exercising the initiative prerogative, and, although they made haste to publish the measure on discovery of the rule, yet it was not in a paper designated by the council, and also confessedly too late to comply with the provisions of the ordinance as to time.   It is urged that this was a special ordinance intended only to serve a temporary purpose at the time of its passage, and that it was not posted or published.   Referring, however, to the act of February 17, 1899 (Sp. Laws 1899, p. 1008), incor-

porating Dalles City, we find no distinction made between special and general ordinances. Municipal legislation in Dalles City is promulgated as a law by section 38 of its charter, reading thus:

"Upon the passage of any ordinance, the enrolled copy thereof, attested by the recorder, shall within five days be submitted to the mayor by the recorder; and if the mayor approve the same he shall write upon it 'Approved,' with the date thereof, and sign it with his name of office; and thereupon, unless otherwise provided therein, such ordinance shall become law and be of force and effect."

No publication or posting is required to give sanction to its laws in the defendant city. Moreover, the ordinance does not in its terms restrict its operation to any particular legislation. Its language is general and applies with equal force to all manner of initiative and referendum measures. As authorized by the state Constitution, the city by its constituted authorities, the mayor and councilmen, prescribed a law governing the exercise of the initiative within its limits.

5. The amendment to the city charter comes within the scope of such legislation; and, while the power to enact laws affecting the local concerns of the municipality is vested in the people of the city, it is requisite that the process be in accordance with the formula prescribed by the people themselves through their representatives in council assembled. Confessedly the friends of the proposed amendment proceeded in ignorance of the law of the city on that question until it was too late to publish the measure in the manner required by that legislation. In *Wright* v. *McMinnville,* 59 Or. 397 (117 Pac. 289), it was held in substance that the manner of giving notice of initiative measures prescribed by the ordinance on that subject

must be strictly followed, and that a failure to comply with the requirements of the municipal law in that respect was fatal to the legislation attempted.   The same principle was announced by Mr. Justice MOORE in *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292, Ann. Cas. 1914B, 230), in these words:

"Whatever the rule may be in other states, it is settled in Oregon that at a special election the notices thereof, required by the statute to be given, constitute a condition precedent which must be observed in order to validate measures to be voted upon"—citing *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328, 120 Am. St. Rep. 786); *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158).

To the same effect is *Palmberg* v. *Astoria,* 63 Or. 222 (127 Pac. 32).

It is analogous to the manner in which jurisdiction over the subject matter or parties to a proceeding is acquired by a court.   Unless the notice is published by authority, in the manner and at the time required, the proceeding has no more force than the judgment of a court, where there was no service of summons and no appearance of the defendant, although he may have read all about the litigation in the newspapers.   If those who initiate measures can shorten the time of publication or choose their own medium of advertisement, contrary to the terms of the ordinance on the subject, they may dispense with all or any other established restrictions and substitute a procedure of their own to suit the particular occasion.

In the exercise of their sovereign power, the people had a right to prescribe for the 15 per cent minority which may initiate a measure, rules and regulations restricting and governing the exercise of this important power.   If the small minority mentioned would urge a measure, it must do so in accordance with the express

will of the people, at least far enough to strictly comply with the manner of giving notice to the electorate of the measure proposed. It is true that the writ recites at great length the pains taken to advertise the matter in the city; but it is not within the power of any private individuals to substitute their own procedure and judgment for the will of the people, as expressed in their previous legislation. The proposed amendment, therefore, must fail, because the conditions requisite to this procedure, as prescribed by the people, were not observed in giving notice of the measure.

6, 7. In our judgment the enacting clause, "The people of Dalles City do ordain as follows," was sufficient to effect the amendment of the charter, if the proceeding had been otherwise regular. It is the sanctioning formula prescribed for municipal legislation by the charter itself, and is the phrase commonly employed for enactments by a city. The term "ordain" is equivalent in potency to "be it enacted," or any like expression. Even the preamble to the Constitution of the state reads, "We, the people of the State of Oregon, * * do ordain this Constitution." Article IV, Section 1, of that instrument, in saying that "the style of all bills shall be 'Be it enacted by the people of the State of Oregon,'" refers only to measures treated by the legislative assembly or the people of the whole state. It would be incongruous to put this latter enacting clause upon amendments to a local city charter, for it would not be according to the fact.

8. We are also of the opinion that, when the people of a city have amended their charter by the use of the word "ordain," this circumstance alone does not empower the council to repeal the amendment as it would a mere ordinance enacted by itself or the peo-

ple, for the authority to enact or amend the charter of any city is vested in its legal voters by Article XI, Section 2 of the state Constitution.

9. The other reasons urged by the defendants for not calling an election amount to criticisms of the amendment indicating that the council has assumed to act as a censor upon the wisdom of the proposed legislation and to foresee difficulties in the execution of the law. Subject to rules prescribed by themselves or their representatives, the people have a right to exercise the initiative power in cities. It is one of the peculiarities of the initiative system that a minority of 15 per cent may thrust upon the electorate any measure, however crude and ill-digested, but this is in pursuance of the voice of the people, and the city council in this instance had no right to do aught but obey the popular will. The defect in this proceeding is that the friends of the measure did not begin *mandamus* proceedings early enough in their campaign. The council had no right to refer the matter to its judiciary committee for the purpose of avoiding or postponing its duty under the ordinance governing the same, nor to neglect or refuse to designate a paper in which publication of the measure should be had. That was a plain ministerial duty which could have been enforced by *mandamus* at the proper time. It is not within the authority of the council to pursue obstructive tactics, as against the reserved power of the people, and, when a proper case is presented, it is a duty of that body to act as required by its own ordinance. It is not theirs to question the wisdom of any legislative measure presented in proper form. On the other hand, it is the duty of those who would put in motion the initiative power to comply with the restrictions which the people have ordained in that respect. For

want of this, the proposed amendment was not legally adopted, and must be disregarded.

There being, therefore, no valid authority for calling the special election in question, the writ will be dismissed. WRIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE BEAN did not sit.