[Crim. No. 1491.   First Appellate District, Division One.—December
26, 1928.]

In the Matter of the Application of HARRY GATSIOS
for a Writ of Habeas Corpus.

Alfred J. Hennessey and Virgil J. Garibaldi for Petitioner.

John J. O'Toole, City Attorney, Henry Heidelberg, Deputy City Attorney, and Matthew Brady, District Attorney, for Respondent.

THE COURT.—Harry Gatsios is the proprietor of a butcher-shop in the city and county of San Francisco where meat, inspected by authorized inspectors under the inspection laws and regulations, is sold. He was taken into custody upon the complaint that he had violated Ordinance No. 6157, New Series, of the municipality in that on Saturday, December 3, 1927, between the hours of 7 and 8 o'clock P. M., he sold and offered for sale at his shop certain uncured and uncooked meats, contrary to the provisions of the ordinance, which reads as follows:

"Section 1. It shall be unlawful for any person, firm, partnership, association or corporation, within the city and county of San Francisco, to sell or offer for sale any uncured or uncooked meats from any established place of business in the city and county of San Francisco for the purpose of sale and delivery to dealers or consumers or for the purpose of any delivery, or to keep open for business any place of business where any uncured or uncooked meats are sold or offered for sale, or permit such place to be kept open for business, or to receive at such place of business, any uncured or uncooked meats, except between the hours of 7 o'clock A. M. and 6 o'clock P. M. on days other than Sunday, New Year's day, Washington's birthday, Decoration day and Christmas day, or to sell or offer for sale within the city and county of San Francisco any uncured or uncooked meats, except at and from an established and fixed place of business at which said meats are regularly inspected by state and municipal inspectors; provided, however, that in case of a holiday falling on Saturday, the place of business

hereinabove defined may be kept open between the hours of 7 o'clock A. M. and 12 o'clock noon.

"And provided further that any place of business where strictly Kosher meats are sold or offered for sale may be kept open on Saturdays from sundown until 10 o'clock P. M., and on Sundays from 7 o'clock until noon. And be it further provided that all emergency cases be left to the discretion of the Health Officer of the city and county of San Francisco.

"Section 2. Every person, partnership, association, firm or corporation violating any of the provisions of this ordinance or by doing any act or thing herein declared to be unlawful shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars, nor more than two hundred dollars, or by imprisonment in the city prison for not more than six months, or by both such fine and imprisonment."

It is contended on behalf of the prisoner that the ordinance is unconstitutional and void for the reason that the proviso therein "that any place of business where strictly Kosher meats are sold or offered for sale may be kept open on Saturdays from sundown until 10 o'clock P. M. and on Sundays from 7 o'clock A. M. until 12 noon" creates as against those who do not sell or offer for sale Kosher meats at their places of business (his shop being of that class) an arbitrary and unreasonable discrimination.

The ordinance attempts to discriminate between "places where Kosher meats are sold or offered for sale" and places where such meats are not on sale; and, according to its provisions, dealers in Kosher meats may sell between sundown and 10 o'clock P. M. on Saturdays and between 7 o'clock A. M. to noon on Sundays; while other dealers must close their shops from 6 o'clock P. M. on Saturday until 7 o'clock on Monday morning.

The state law governing the slaughter of animals and the inspection of meat (Stats. 1921, p. 1269) gives to the director of agriculture general supervision of slaughterhouses within the state, the object being to insure a supply of wholesome meat, and for this purpose he is authorized to employ competent inspectors. Notwithstanding that general superintendence in such matters is given the director of agriculture, the statute also permits cities and counties to

provide by ordinance for local supervision and to make inspection by their own inspectors. Slaughtering on Sundays and legal holidays is prohibited except by special permit, the work on other days being confined between the hours of 7 o'clock A. M. and 8 o'clock P. M., but no attempt is made by the statute to regulate the hours of business of markets. The purpose of such ordinances as the one in question is the protection of public health, and the provision thereof regulating the hours of business of shops and markets where the products sold are subject to inspection by public authority, is to prevent evasion of the law during the hours when such inspectors are not on duty. An ordinance of this character will be upheld as a valid exercise of the police power if its requirements are not unreasonable and its provisions do not discriminate in favor of or against particular persons or classes of persons as to whom no reasonable basis of discrimination exists.

The first objection does not obtain here, but the ordinance by the exception noted above does discriminate between meat called Kosher, that is, the flesh of animals killed according to the Hebrew ritual, and the flesh of animals not so killed. It appears that according to the ritualistic practice mentioned, slaughtering is entrusted to those skilled in the handling of the instruments used for that purpose and instructed in Jewish laws and usages in the same connection, the object being to prevent as far as possible the distribution of meat considered ceremonially unclean as well as that which by reason of disease is unfit for human consumption. The latter purpose is accomplished for the whole community by the inspection laws; and it is not contended that greater protection to health is afforded by the Kosher method than by that followed in the preparation of other meats, both being designed to remove from the carcass of the animal as much of the blood as possible, the difference in practice between the two being that by the Kosher method the arteries of the neck are severed while the animal is yet conscious, and by the other the same arteries are severed after the animal has been rendered unconscious.

As stated, the ordinance divides butcher-shops into two classes, viz., those where "strictly Kosher meats are sold or offered for sale" (this classification by implication including shops where both Kosher and other meats are sold), and

those where only meats other than Kosher are sold or offered for sale. Those forming the first class are permitted to do business on Saturday nights and Sundays, while to the second class this privilege is denied, notwithstanding that no material difference in the quality of the meats or the conditions under which the same are prepared or distributed is claimed to exist.

The source of the power of municipalities to enact ordinances of this character is found in section 11 of article XI of the constitution; and while the provisions of section 11 of article I of the constitution in regard to the uniformity of laws do not apply to municipal ordinances (*Hellman* v. *Shoulders,* 114 Cal. 146 [44 Pac. 915]; *In re Zhizhuzza,* 147 Cal. 328 [81 Pac. 955]), nevertheless the power conferred is limited by section 21 of the latter article, which reads: "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislature, nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." As was said by the court in the case of *In re Blois,* 179 Cal. 291 [176 Pac. 449], "This latter section has been given direct application to ordinances by which attempts have been made to discriminate in favor of or against particular persons or classes of persons as to whom no reasonable basis of discrimination can be seen to exist; and in all such cases the courts have uniformly held such attempted legislation to be void."

As was held in *Martin* v. *Superior Court,* 194 Cal. 93 [227 Pac. 762], the classification must not be arbitrarily made for the mere purpose of classification but must be based upon natural or constitutional distinctions.

In the present case the facts shown furnish no reasonable basis for the classification attempted to be made, and the result is the granting of a privilege to one class from which the other is arbitrarily excluded.

The invalidity of the exception, however, does not necessarily affect the validity of the remaining portion of the ordinance. The supervisors had the power to adopt as a police measure an ordinance closing meat markets on Sunday and after nightfall on Saturday. Aside from the exception the ordinance is complete, is not unreasonable, and applies without discrimination to all shops where uncured or uncooked meats are sold. It is the rule that when a

proviso in the nature of an exception to an act is invalid the general provisions of the statute are not invalidated thereby unless it clearly appears that the provisions of the exception are so intimately and inherently related to and connected with the general provisions to which the exception relates that the legislative body would not have enacted the former without the latter. (*People* v. *Monterey Fish etc. Co.*, 195 Cal. 548 [38 A. L. R. 1186, 234 Pac. 398].)

The evident object of the board was to regulate for inspection purposes the hours during which the business of selling uncured and uncooked meats might be carried on, which object is accomplished without the invalid exception. The latter was not so intimately or inherently connected with the general provisions of the act nor did it enter so entirely into its scope and design as to indicate the intention that the general provisions should not be effective or would not have been adopted without it. Under such circumstances, though the exception be treated as a nullity, the balance of the act, under which the prisoner is held in custody, is not affected. (*Ex parte Gerino*, 143 Cal. 412 [66 L. R. A. 249, 77 Pac. 166].)

It is ordered that the writ be discharged and that Harry Gatsios be remanded to the custody of the chief of police of the city and county of San Francisco.

A petition for a rehearing of this cause was denied by the district court of appeal on January 10, 1929, and a petitioner's application to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 24, 1929.

All the Justices present concurred.