[Civ. No. 10012. First Appellate District, Division Two.—January 24, 1936.]

PLAZA AMUSEMENT COMPANY (a Corporation), Appellant, v. WILLIAM H. CARTER, as Commissioner of Safety, etc., et al., Respondents.

Harris & Field for Appellant.

Boyd C. Barrington, City Attorney, and Robert N. Baker, Assistant City Attorney, for Respondents.

STURTEVANT, J.—The defendants' demurrer to plaintiff's amended complaint asking that the defendants be enjoined from enforcing an alleged invalid ordinance was sustained without leave to amend and a judgment was entered dismissing the action. From that judgment the plaintiff has appealed.

Heretofore certain electors of the city of Santa Monica prepared, circulated, and on October 5, 1933, presented an initiative petition that a certain ordinance be enacted. Those papers were headed:

"INITIATIVE PETITION
"TO THE HONORABLE, THE COUNCIL OF THE CITY OF SANTA MONICA, STATE OF CALIFORNIA:

"We the undersigned qualified electors of the City of Santa Monica, do hereby petition you to submit to the electorate, at the next General Municipal Election, the following proposed measure, entitled: . . . " Then followed the title and enacting clause, the provisions of the ordinance under attack, and a prayer for the initiative enactment of said provisions as an ordinance. On November 1, 1933, the defendant Council enacted an ordinance, No. 524, calling an election to be held December 5, 1933. In said ordinance the propositions to be voted on included the identical proposed ordinance designated in the petition hereinabove referred to. It was included in the manner following. Section 2 provides: "(2) For the purpose of submitting to the qualified electors of the City of

Santa Monica, for approval or rejection, that certain ordi-nance in words and figures as follows, towit:" (then follows the title and ordinance as set forth in the petition). Then follows a paragraph as follows: "There having been presented to the City Council of the City of Santa Monica a petition signed by qualified electors of the city in number equal to at least twenty-five per cent (25%) of the total number of voters registered in said city at the last preceding general election, prior to the filing of said petition, asking for submission to the electors of said city of said measure, hereinabove set forth; said petition having been filed prior to sixty (60) days before the election called by this ordinance, each paper of which petition had attached thereto the affidavit of a registered voter of said city, stating that all the signatures to the paper were made in his presence and that, to the best of his knowledge and belief, each signature to the paper appended, was the genuine signature of the person who purports to be thereunto subscribed."

As to the ordinance under attack it will be noted that ordinance No. 524 contains recitals that the ordinance to be voted on was an initiative measure and that the petition was signed by more than 25 per cent of the qualified electors of the city of Santa Monica, the requisite number of signatures to entitle it to be voted on. Claiming that in truth and in fact said petition was not signed by 25 per cent of the qualified electors, the plaintiff then contends that the placing of said proposition on the ballot was a fraud on the electors.

If the initiative petitions were signed by 25 per cent of the qualified electors of the city of Santa Monica, the city council did not err in submitting the ordinance. (Art. XV, sec. 1, of the charter of said city.) If they were not signed by any electors nevertheless, by virtue of other provisions of the charter, the city council had the power of its own motion to submit said ordinance. (Art. XV, sec. 2, of the charter of said city.) The plaintiff's complaint presented the sole question as to whether the insertion in the election notice of the recital "a petition signed by qualified electors of the city in number equal to at least 25% of the total number of voters", etc., was a fraud on the electors and whether said alleged fraud could be inquired into in this action. In other words, will a court undertake to inquire of each elector how he voted and what motive prompted him to do so? In Con-

stitutional Limitations (8th ed.), at page 380, Mr. Justice
Cooley said: ''And although it has sometimes been urged at
the bar that the courts ought to inquire into the motives of
the legislature where fraud and corruption were alleged, and
annul their action if the allegation were established the argu-
ment has in no case been acceded to by the judiciary, and
they have never allowed the inquiry to be entered upon''.
Then follows a long list of authorities. Commencing on page
451 he also said: ''And the same presumption that legislative
action has been devised and adopted on adequate information
and under the influence of correct motives, will be applied
to the discretionary action of municipal bodies, and of the
State legislature, and will preclude, in the one case as in the
other, all collateral attack''. That rule obtains in this state.
In the case entitled *Oroville & V. R. R. Co.* v. *Supervisors of
Plumas Co.*, 37 Cal. 354, at page 363, the court said: ''The
fifth paragraph, which avers that the passage of the Act re-
cited in the petition was procured by fraud, is objectionable,
first, because it is not well pleaded, as the acts constituting
the fraud are not averred. The motion admits, in effect, only
those facts that are well pleaded. A general allegation of
fraud in a pleading will not be regarded. Second, an Act of
the Legislature is not subject to attack on that ground; and
it is sufficient on this point to refer to *Sherman* v. *Story*, 30
Cal. 253, 266 [89 Am. Dec. 93].'' The validity of an ordi-
nance was under attack in *Ex parte Yung*, 7 Cal. App. 440
[94 Pac. 594]. At page 442 the court said: ''It is funda-
mental that courts will not look into the motives of a legisla-
tive body in the exercise of its legislative powers, . . . ''
Similar language is used in *Hadacheck* v. *Alexander*, 169 Cal.
616 [147 Pac. 259]. *In re Sumida*, 177 Cal. 388 [170 Pac.
823], involved another ordinance. At page 390, Mr. Justice
Shaw, speaking for the court, said: ''The title of the ordi-
nance declares, and its terms show, that its purpose was to
provide a day of rest one day in the week for those pursuing
the occupations forbidden to be carried on upon Sunday.
There may have been other designs in the minds of the board
of trustees of the town in adopting the ordinance. But that
question cannot be inquired into in this manner, nor can an
ordinance be declared invalid because of the bad motives of
the members of the legislative body which enacted it.'' An
ordinance of San Francisco regulating laundries was before

the court in *Soon Hing* v. *Crowley*, 113 U. S. 703 [5 Sup. Ct. 730, 28 L. Ed. 1145]. At page 710, Mr. Justice Field, writing the opinion, said: "The principal objection, however, of the petitioner to the ordinance in question is founded upon the supposed hostile motives of the supervisors in passing it. The petition alleges that it was adopted owing to a feeling of antipathy and hatred prevailing in the city and county of San Francisco against the subjects of the Emperor of China resident therein, and for the purpose of compelling those engaged in the laundry business to abandon their lawful vocation, and residence there, and not for any sanitary, police, or other legitimate purpose. There is nothing, however, in the language of the ordinance, or in the record of its enactment, which in any respect tends to sustain this allegation. And the rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile. And in the present case, even if the motives of the supervisors were as alleged, the ordinance would not be thereby changed from a legitimate police regulation, unless in its enforcement it is made to operate only against the class mentioned; and of this there is no pretense." That case seems to be one of the leading cases in America on the point presented. (See Rose's Notes, vol. 12, p. 978.)

Plaintiff cites and relies on *Palmberg* v. *Kinney,* 63 Or. 222 [127 Pac. 32]. It contains nothing at variance with the foregoing authorities.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.