[Civ. No. 19417. First Dist., Div. One. Oct. 4, 1961.]

LYNCH MEATS OF OAKLAND, INC. (a Corporation) et al., Plaintiffs and Respondents, v. THE CITY OF OAKLAND et al., Defendants and Appellants; PAUL BUSCH, Intervener and Appellant; RANSOM ERNEST LOCKE, Intervener and Respondent.

Hilton J. Melby and John W. Collier, City Attorneys, Mark B. Shragge, Deputy City Attorney, Jefferson E. Peyser and Francis H. Ollerdessen for Appellants.

Hardin, Fletcher, Cook & Hayes, Caldecott & Peck, Guidotti & Mellana and Cyril Viadro for Respondents.

BRAY, P. J.—In a declaratory relief action brought to determine the constitutionality of a certain ordinance, defendant, city of Oakland, and intervener, Paul Busch, appeal from a judgment in favor of plaintiffs and intervener, Ransom Ernest Locke, declaring said ordinance unconstitutional.

## QUESTIONS PRESENTED

1. Is the ordinance requiring the closing of places selling uncured and uncooked meats between the hours of 6 p. m. and 7 a. m. and on Sundays and certain holidays unconstitutional?

2. Alleged error in admitting evidence of opinion of 43 health officers.

## RECORD

In 1932 the city of Oakland adopted an ordinance known as section 4-3.43 of the Oakland Municipal Code prohibiting in the city of Oakland the sale of uncured and uncooked meats between the hours of 6 p. m. and 7 a. m. in any weekday,

on Sundays and on eight specified holidays. Plaintiffs, operating meat markets in Oakland, filed this action in declaratory relief to have said ordinance declared unconstitutional. Paul Busch intervened, alleging that he is engaged in said city in the business of selling uncured and uncooked meats and that the abolition of the ordinance would produce a health hazard, contending that the ordinance is constitutional. Ransom Ernest Locke intervened, alleging that he operates a meat market in Oakland, and contends that the ordinance is unconstitutional. The court found that the hours of sale of uncooked and uncured meats now have no relationship to the protection of public health, and that the ordinance is discriminatory, an arbitrary classification and unconstitutional.

1. *Validity of the Ordinance.*

As said in *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 146-147 [346 P.2d 737], ''Where, as here, it is urged that a statute does not constitute a proper exercise of the police power, the inquiry of the court is limited [1] to determining whether the object of the statute is one for which that power may legitimately be invoked and, if so, [2] whether the statute bears a reasonable and substantial relation to the object sought to be attained.'' The same rule applies to an ordinance of a municipality as to a statute. It is not questioned that the inquiry as to (1), must be answered affirmatively, that the municipality has the power to regulate meat markets. As said in *In re Lowenthal* (1928), 92 Cal.App. 200, 202 [267 P. 886] : ''The conduct of a meat market has always been the subject of regulation under the police power of the state or any municipality.''

In considering the second portion of the above rule, it must be remembered that the determination by the legislative body that the ordinance is necessary for the protection of the public health may not be disturbed by the courts, in the absence of a showing that the regulation in the ordinance bears no substantial relation to the object sought to be obtained. (See *Lowenthal, supra,* p. 202.)

Ordinances practically identical with the Oakland one have been held constitutional in the following cases: *In re Lowenthal, supra,* 92 Cal.App. 200; *In re Gatsios* (1928), 95 Cal. App. 762 [273 P. 826] ; *Dorsa* v. *Board of Supervisors* (1937), 23 Cal.App.2d 217 [72 P.2d 912] ; *In re Banta* (1938), 25

Cal.App.2d 622 [78 P.2d 243]; *Justesen's Food Stores* v. *City of Tulare* (1941), 43 Cal.App.2d 616 [111 P.2d 424].\*

There are no cases in California holding to the contrary. The ground upon which the like ordinances have been upheld is that inspection of meat markets is necessary for the preservation of public health, that inspection forces are usually employed only in the daytime, that it is unreasonable to expect municipalities to establish inspection forces for night inspections of meat markets, and that as said in *Lowenthal, supra,* page 203, concerning an ordinance requiring closing of meat markets at night, "Its manifest *object* is to prevent the sale of unfit or tainted meat at a time when those employed to safeguard the people are not on duty." (Emphasis added.)

The last case in California discussing ordinances closing meat markets at night was decided in 1941 in *Justesen's Food Stores* v. *City of Tulare, supra,* 43 Cal.App.2d 616. It reaffirmed the principle that such an ordinance was constitutional because of the necessity for, but lack of inspection at night. *In re Lowenthal, supra,* at page 203, stated that "Fresh and uncooked meats . . . require[ ] *constant* supervision to insure their wholesomeness. . . ." (Emphasis added.) The other cases considering the question refer to the statement in *Lowenthal* concerning the need for *constant* supervision. In *Justesen's Food Stores, supra,* 43 Cal.App.2d 616, the court said at page 622: "[T]here is a need for *rigid and frequent inspections* by skilled public inspectors of fresh meats carried in meat markets and butcher shops to prevent the sale of impure or tainted meats. . . ." (Emphasis added.) In *Ganley* v. *Claeys* (1935), 2 Cal.2d 266 [40 P.2d 817], where the court held unconstitutional an ordinance regulating the opening and closing of barber shops, the court distinguished the situation in the butcher shop cases by saying that "regulation in the butchering business . . . deals directly with the product which is subject to *rigid* inspection. . . ." (P. 269, emphasis added.) Thus, it appears that the meat market closing regula-

---

\*In *Justesen's Food Stores, Inc.* v. *City of Tulare* (1938), 12 Cal.2d 324 [84 P.2d 140], the Supreme Court in evaluating an ordinance prohibiting the sale of uncooked and uncured meats and "other foods of any kind" by certain retailers, except between hours established for the hours of duty of meat and food inspectors, stated, "If its provisions related only to food susceptible to quick spoilage, including meats, uncooked and uncured, there could be no question as to its validity as a health-promoting law. . . ." (P. 331.)

tions have been upheld because at the time they were considered there appeared to be a necessity for "constant supervision" (*In re Lowenthal, supra,* p. 203) and "rigid and frequent inspections" (*Justesen's Food Stores, supra,* p. 622).

Does it now appear that such necessity no longer exists? ▮ In determining that question we must bear in mind, "The principles governing courts in determining the validity of legislative enactments under the due process of law clause are clearly defined. A legislative body, in the exercise of its police power, has a broad discretion to determine both what public interests are and the measures necessary for the protection of such interests. The determination of the need for a mode of exercising the power is primarily for the legislative body and the courts will not hold enactments invalid unless they are palpably unreasonable, arbitrary or capricious, having no tendency to promote the public welfare, safety, morals, or general welfare. Every presumption is in favor of the reasonableness of the law and its validity. A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body. If reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld. [Citations.]" (*Justesen's Food Stores, supra,* pp. 620-621.) While it is doubtful if the courts may take judicial notice of the details of refrigeration and whether butcher shops as a whole are completely refrigerated, or the extent to which packaging of meats is used (as the trial court apparently did), it is certain that notice may be taken of the fact that there has been a great change or improvement generally in the matter of refrigeration in such shops and that the packaging of meats in plastic or cellophane containers is carried on in many shops, and is a development since the year 1941 when the last case on this subject was considered.

Dr. Malcolm, the Alameda County Health Officer, testified that the purposes of inspection of meat markets were "[f]or sanitary aspects, cleanliness, the handling and storage of the product or meat, to see whether the materials are properly displayed from the standpoint of refrigeration, or away from persons who might—general cleanliness of the place; whether or not there are adequate facilities, for example, toilet facilities or hand-washing facilities for the persons involved . . . how it [meat] is displayed, whether meats are properly refrigerated, whether the general cleanliness of the

meat market area is appropriate.'' Both Dr. Malcolm and Dr. Geiger, the latter testifying for appellant, agree that the primary purpose of city inspection is inspection of the markets and not of the meats, except, of course, any spoilage which may occur in the market. It is considered that the inspection of meat before it reaches the market by various governmental agencies is sufficient to insure that the meat is in proper condition for sale on arrival. Dr. Malcolm testified that the hours of sale are not related to the public health nor are the inspectional services for the protection of the public health in any way related to the hours of sale of meat. The city inspects, on the general average, about five or six times per year. Although the sanitarians who make the inspection work an 8-hour day, 40-hour week, on occasion they have inspected on a Sunday or holiday. In the latter inspections they found no differences in the condition of the markets from that during regular working hours. Dr. Geiger testified that the more meat is handled the more the possibility of harm to the public therefrom. Dr. Geiger said, in effect, that in his experience every community should have more meat market inspections than it has. When asked, if meat were sold ''around the clock'' would it be necessary, in order to protect the public health, to increase the inspection facilities beyond those now existing, he answered, ''It would be necessary to increase inspection. The percentage that you may use, I don't know. It depends upon circumstances.'' Dr. Geiger further testified that the important thing was how the meat was ''handled before it was frozen,'' which of course dealt with inspection before it reached the market. Finally, he was asked if the restriction of the hours of the sale of uncured and uncooked meats has any basis in public health protection. He answered, ''It has, when it has no inspection.'' He then stated, ''. . . the hours do not mean a thing to *me*. It is the matter of inspection.'' (Emphasis added.) Thus, we have a situation in which one expert says, in effect, that there is no relationship between the hours of sale and the requirement of inspection and the other says there is. Both experts are well qualified. It would appear, then, that the question we are concerned with is one upon which reasonable minds may differ, and therefore, the courts may not hold the ordinance to be arbitrary or unreasonable, as the courts may not substitute their judgment for that of the legislative body unless that body has acted without substantial grounds.

As said in *Lelande* v. *Lowery* (1945) 26 Cal.2d 224 [157 P.2d 639, 175 A.L.R. 1109], ''When the classification made by the Legislature is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts is presumed, and one who assails the classification must carry the burden of showing that it is arbitrary.'' (P. 232.)

The court found that the hours of sale of uncured or uncooked meats now have no relation to the protection of public health and that an enlargement as to the hours of sale does not increase the health hazard as long as there is *adequate inspection of the facilities and personnel* used in the cutting, packaging and displaying of such meat. This finding is not of much benefit in determining whether or not adequate inspection would require night inspection, or the threat of it, in the event the markets were open at night. The court found the necessity of adequate inspection, yet on evidence on which reasonable minds could disagree as to its effect, the trial court set aside the legislative determination that ''The ordinance under consideration is one designed to protect the public health'' which ''determination by the legislative body that the regulation is essential, will not be disturbed by the courts.'' (*Lowenthal, supra,* p. 202.) This legislative determination has been acquiesced in and followed for over 30 years. It cannot be set aside by a showing of change of conditions no greater than that shown in this case.

The finding that ''by reason of the lack of similar ordinances in municipalities contiguous to the City of Oakland that those engaged in the retail meat business in the City of Oakland are forced to meet unfair competition due to the fact that uncured and uncooked meat products can be bought at any hour in other municipalities'' cannot be made a ground for declaring the ordinance void. In the first place there is no evidence to support it. Secondly, even if there were, the constitutionality of Oakland's ordinance cannot depend upon what other municipalities do or not do.

There is no evidence to support the finding that ''It is not true that said ordinance was adopted to protect the citizens of the City of Oakland in the matter of the sale of uncured and uncooked meats during hours when meat inspectors were not on duty.'' Such finding trespasses upon the presumption that the legislative body acted from proper motives, ''[a]nd the rule is general with reference to the enactments of all

legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation.'' (*Plaza Amusement Co.* v. *Carter* (1936) 11 Cal.App.2d 414, 418 [54 P.2d 67].)

2. *Other Health Officers.*

Over objection Dr. Malcolm was permitted to testify that he had discussed the relationship of hours of business to inspection with 43 other health officers and that they were of the same opinion as he, and that he had based his opinion on conversations and discussions with these others. In *Frampton* v. *Hartzell* (1960), 179 Cal.App.2d 771 [4 Cal.Rptr. 427], we said concerning the testimony of a doctor giving the opinion of other doctors: ''The testimony concerning the opinion of the other doctors was obviously hearsay and therefore incompetent. See *Gromeeko* v. *Gromeeko,* 110 Cal.App. 2d 117, 127 [242 P.2d 41] . . . . The reason for this is obvious. The opportunity of cross-examining the other doctors as to the basis for their opinion, etc., is denied the party as to whom the testimony is adverse. [Citations.]'' (P. 773.) Apparently the trial court considered this testimony in arriving at its conclusions as it alludes to the testimony in its memorandum opinion.

The court found that in the 27 years since the adoption of the ordinance ''tremendous strides have been made in improving the sanitary facilities for the slaughtering and handling of meat, and a radical change has taken place in packaging of meat for retail sale, and in the refrigeration of meat products.'' There was evidence to support the portion of the finding dealing with the slaughtering of meat; however, the validity of this type of ordinance as found by the courts is not based upon the necessity of inspection of slaughtering, the cases all holding that the purpose of such ordinance is inspection of the places of sale. As to the balance of the finding, there was no evidence to that effect introduced in the case. The court seemed to assume judicial notice of it. As we have pointed out, the courts may take judicial notice of the fact that there has been a change in the packaging and refrigeration of meats, but not of the extent of such change nor its application to the situation intended to be met by the ordinance. There was no evidence to the effect that butcher shops no longer cut meat as ordered. In spite of this improvement

meat markets still can be unclean, meat improperly "displayed from the standpoint of refrigeration," and meat become spoiled from careless handling, etc.

It is true that the evidence shows that it is the custom in Oakland to inspect only five or six times a year, and that on occasion after-hours inspection has been made. Whether this is adequate inspection does not appear except indirectly, as Dr. Malcolm was not asked directly concerning the adequacy of the inspection. Dr. Geiger said, in effect, that it is not. "It is not for the court to pass upon the general expediency or effectiveness of the legislation called in question, but to determine whether it is valid." (*Brougher* v. *Board of Public Works* (1930) 107 Cal.App. 15, 25 [290 P. 140].) As said in *City of Cincinnati* v. *Morton* (1938), 58 Ohio App. 485 [16 N.E.2d 826, 828], ". . . whether an inspection is actually made cannot be made the basis of an attack upon the validity of the ordinance." If the hours of sale are enlarged by the elimination of the ordinance, the very purpose of the ordinance, held legitimate as to a similar ordinance in *Lowenthal, supra,* page 203, would be frustrated. "Its manifest object is to prevent the sale of unfit or tainted meat at a time when those employed to safeguard the people are not on duty." It must be remembered that it is not only inspection itself, but the threat of inspection at any time when the market may be open, that safeguards the public health.

The court unduly restricted appellants in the cross-examination of Dr. Malcolm and in the examination of Dr. Geiger. In view of our decision it becomes unnecessary to discuss whether such restriction was prejudicial.

The record fails to disclose any reason to hold that the "manifest object" of the ordinance is not still "to prevent the sale of unfit or tainted meat at a time when those employed to safeguard the people are not on duty." (*Lowenthal, supra,* p. 203.)

The judgment is reversed.

Duniway, J., concurred.

TOBRINER, J.—I concur upon a narrow ground.

A statute that under older and outmoded conditions may have stood the test of constitutionality may succumb to the impact of a new technology. As the majority opinion points out, a statute must bear a substantial relation to that objective which it seeks to effect; if it fails to do so, it cannot stand.

In the instant case the desired end of the ordinance, the protection of the public health, may now be so unrelated to the alleged need for nocturnal inspection of meat markets that it must fail. The lack of such inspection may have currently become so tangential that it cannot affect the public health and, indeed, be quite irrelevant to that avowed end. If the record supported such a conclusion, the ordinance could not be sustained. I am in doubt that this record does so; I therefore concur.

In view of modern refrigeration and conditions of sanitation in meat markets, does the claim that night inspections are requisite to the preservation of the public health become untenable? Is such a contention a device to prevent competition through the opening of markets at night, and merely a means to corral the service to a daytime operation for covert economic reasons that do not appear on the face of the ordinance? Is the public being deprived of the opportunity of purchase of meat at night upon an archaic assertion of the protection of the public health? These are troubling questions, and the record here does not supply the answers.

The record specifically does not evince a showing that present marketing mechanics in the form of refrigeration and packaging are so general and so effective that nighttime inspection is no longer necessary. While we may, as the majority opinion states, take judicial notice of improvements in the packaging of the meat and the refrigeration of the shops, we cannot take judicial notice of the *extent* of such changes. The record does not clearly and specifically show the nature and use of improved technology or the impact of it, if any, upon the need for night inspection.

In passing upon the constitutionality of this ordinance we must indulge "[e]very presumption . . . in favor of the reasonableness of the law and its validity." (*Justesen's Food Stores* v. *City of Tulare* (1941) 43 Cal.App.2d 616, 621 [111 P.2d 424].) We cannot inject into the record such facts as conceivably might invalidate the ordinance; we are constrained to do the opposite.

The insufficiencies of the showing in this particular litigation therefore impel me to uphold the constitutionality of the ordinance upon this sole ground.

Respondents' petition for a hearing by the Supreme Court was denied November 29, 1961.