35 Cal.App.2d Supp. 758 (1939)
THE PEOPLE, Respondent,
v.
CHARLES GIDALY et al.,Appellants.
California Court of Appeals. 
July 18, 1939.
 Rosecrans & Emme, Bayard R. Rountree, James M. Carter and John C. Packard for Appellants.
 Gallagher, Wirin & Johnson, as Amici Curiae, on Behalf of Appellants.
 Ray L. Chesebro, City Attorney, W. Joseph McFarland, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.
 Shaw, P. J.
 These two appeals were argued together, they involve different provisions of the same ordinance and some of the points made are applicable to both appeals, so we consider them together.
 The complaint in each case charges the defendants therein with violating the Los Angeles city initiative ordinance No. 80170, dealing with picketing, which was before us in People v. Tilkin, (1939) 34 Cal.App.2d Supp. 743 [90 PaCal.2d 148], and each of the complaints was framed in accordance with our decision there, in such form that each presents the question of the validity of a separate set of provisions of this ordinance.
 The ordinance contains in section 1 certain definitions, those material here being as follows:
 "(a) The term 'to picket' shall mean and include to walk, march, patrol or ride to and fro, back and forth, or in any other repeated or successive or continuous manner, or to stand, sit or remain, in front of, in the vicinity of, or about any place of business, any place of residence, or any of the approaches leading thereto or therefrom."
 "(c) The term 'bona fide strike' shall mean and include any cessation of work by at least a majority of all of the bona fide employees of all classes of an employer in order to obtain or resist a change in wages, hours or conditions of their employment after demands made therefor on such employer, [35 Cal.App.2d Supp. 761] which cessation of work has taken place after a majority of all of the bona fide employees of all classes of such employer have by secret ballot voted to strike. A bona fide strike may exist against such employer generally, or may exist only at one or more of the separate places of business of such employer. In the latter case this subsection (c) shall be applied and interpreted, with respect to the determination of 'bona fide employees' and 'majority', as if the place or places of business at which said bona fide strike exists were the only place or places of business of such employer."
 "(d) The term 'bona fide employee' of any employer shall mean a real person (1) who is employed by such employer and has been continuously employed by such employer for a period of not less than thirty (30) days, or (2) who was employed by such employer and had been continuously employed by such employer for a period of not less than thirty (30) days at the time a majority of such bona fide employees of such employer voted for or commenced a bona fide strike against such employer; but shall not include any employee or former employee of an employer if such employee or former employee shall have entered such employment for the purpose of picketing or of creating an industrial dispute or strike."
 Other material parts of the ordinance were set forth in People v. Tilkin, supra, 34 Cal.App.2d Supp. 743 [90 PaCal.2d 148], and will not be repeated here in full. The prohibitions here in question appear in sections 3 and 4, which, as we held in People v. Tilkin, are to be construed together and create a considerable number of separate offenses, the various provisions of section 4 being regarded as parts of the definitions of these offenses, and not mere exceptions to section 3. The provision of section 3 which is a part of the charge in each of these cases refers to picketing on a public street "in a manner calculated ... to induce or influence any person to refrain from entering, occupying or leaving any place of business, or to refrain from performing services or labor, or to refrain from seeking or obtaining employment, or to refrain from purchasing, selling, using, delivering, transporting or receiving any goods, wares, merchandise, services, entertainment, accomodations or articles". Section 4, as construed in People v. Tilkin, supra, adds to this description, in completion of the definition of one [35 Cal.App.2d Supp. 762] of the offenses created by these sections--that charged here in People v. Gidaly, Cr. A. No. 1602--provision that picketing shall not be done in the manner described in section 3 at a place of business where there is no "bona fide strike", and adds, in completing the definition of another offense--that charged in count II of the complaint in People v. Aragon, Cr. A. No. 1607--provision that picketing shall not be so done by any person who is not a "bona fide employee" at the place picketed. Count I of the last-mentioned complaint charged an offense of which the defendants were found not guilty.
 The facts in each case are undisputed and were presented to the trial court by a written stipulation. In People v. Gidaly, it appears that the place of business picketed had twenty "bona fide" employees, that seventeen of them remained at work and three struck for higher wages. These facts prevented the strike from being "bona fide" within the definition above quoted. Appellant Gidaly, who picketed this place of business, was one of the three strikers. In People v. Aragon there was a strike in which thirty of the thirty-two employees took part, and there is no showing that it was for any reason not "bona fide", but two of the appellants who picketed the place of business where the strike occurred were not and never had been employees there, being union organizers, and the third had been employed there continuously for only 24 days at the time of the strike. These three appellants were therefore not "bona fide" employees within the terms of the ordinance.
 There is no contention in either case that the stipulated facts do not support the charge made, but both of the ordinance provisions on which the charges are based are attacked on constitutional grounds, one of which is that the classifications made by the ordinance in its definitions of "bona fide strike" and "bona fide employee", above quoted, are unreasonable and arbitrary and hence in violation of the Fourteenth Amendment, particularly its provision forbidding a denial of the equal protection of the laws, and also of the provisions of the California Constitution. This contention must be sustained.
 [1] In passing on the matter, we begin with two propositions. In the first place, whatever desire the framers of this ordinance may have had to discourage strikes, they gave no expression to any such desire by incorporating in [35 Cal.App.2d Supp. 763] the ordinance any prohibition of strikes. Neither this ordinance nor any other of which we are advised, nor any state law, forbids strikes. The right to strike is fully recognized in California. (Parkinson v. Building Trades Council, (1908) 154 Cal. 581, 599 [98 P. 1027, 16 Ann. Cas. 1165, 21 L.R.A. (N. S.) 550]; Lisse v. Local Union No. 31, (1935) 2 Cal.2d 312, 318 [41 PaCal.2d 314].) In the second place, the ordinance before us, as we held in People v. Tilkin, supra, 34 Cal.App.2d Supp. 743 [90 PaCal.2d 148, 153], has as its purpose the regulation, not the suppression of picketing, which it recognizes as a proper instrumentality for use in labor disputes. In pursuance of its purpose, and to set up criteria for determining who may picket and under what circumstances it may be done, classifications have been made by the ordinance, and the only question we have to pass upon is that of their validity.
 [2] The rules governing the validity of legislative classification under the Fourteenth Amendment are well settled. That amendment applies to city ordinances. (Home Tel. etc. Co. v. Los Angeles, (1913) 227 U.S. 278, 294 [33 S.Ct. 312, 57 L.Ed. 510, 518].) "In order, however, that a statute shall be valid which contains a classification of persons or things for the purpose of legislation, such classification must be a reasonable one, and must be based on real distinctions in the subject matter which bear some relation to the object sought to be accomplished by the statute." (12 Cor. Jur. 1148, 1149.) "The equal protection guaranteed by the Constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated. ... Neither can it make a classification of individuals or corporations which is purely arbitrary, and impose upon such class special burdens and liabilities. Even where the selection is not obviously unreasonable and arbitrary, if the discrimination is based upon matters which have no relation to the object sought to be accomplished, the same conclusion of unconstitutionality is affirmed." (Atchison, T. & S. F. R. Co. v. Matthews, (1899) 174 U.S. 96, 104, 105 [19 S.Ct. 609, 43 L.Ed. 909].) "While the difference need not be great, the classification must not be arbitrary or capricious, but must bear some just and reasonable relation to the object of the legislation." (Bayside Fish etc. Co. v. [35 Cal.App.2d Supp. 764] Gentry, (1936) 297 U.S. 422, 429 [56 S.Ct. 513, 80 L.Ed. 772, 777].)
 The same principles have been established by the California decisions in applying to city ordinances and other legislation the provisions of section 21 of article I of the state Constitution that "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." The Supreme Court said of this provision in In re Blois, (1918) 179 Cal. 291, 295 [176 P. 449], "This latter section of the Constitution has been given direct application to statutes and ordinances which have been enacted and sought to be enforced either by the state or by political subdivisions thereof, and in which attempts have been made to discriminate in favor of or against particular persons or classes of persons as to whom no reasonable basis of discrimination can be seen to exist; and in all such cases the courts of this state have uniformly held such attempted legislation to be void." In In re Sumida, (1918) 177 Cal. 388, 391 [170 P. 823], the court, dealing with a city ordinance, quoted the following language from Ex parte Miller, (1912) 162 Cal. 687, 698 [124 P. 427]: "'A law is general and uniform in its operation when it applies equally to all persons, embraced within the class to which it is addressed, provided such class is made upon some natural, intrinsic or constitutional distinction between the persons composing it and others not embraced in it. ... The difference on which the classification is based must be such as, in some reasonable degree, will account for or justify the peculiar legislation.'" In Martin v. Superior Court, (1924) 194 Cal. 93, 100 [227 P. 762], the court said: "The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attribute which suggest the need for and the propriety of the legislation." See, also, Gaetano Bocci & Sons Co. v. Lawndale, (1930) 208 Cal. 720 [284 P. 654]; In re Gatsios, (1928) 95 Cal.App. 762, [35 Cal.App.2d Supp. 765] 766 [273 P. 826]; In re Boehme, (1936) 12 Cal.App.2d 424, 428 [55 PaCal.2d 559], where the above-mentioned California cases are cited and the rules stated in them approved, and Bueneman v. Santa Barbara, (1937) 8 Cal.2d 405 [65 PaCal.2d 884, 109 A.L.R. 895], where the same rule was applied, the court saying, at page 413, "For mere difference in classification does not meet constitutional requirements. Classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' (Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U.S. 150, 155 [17 S.Ct. 255, 41 L.Ed. 666].)"
 [3] Turning now to the ordinance in question, we find that, as applied to the facts of the cases before us, it makes several discriminations, and we are unable to see that any of them affords a proper basis for legislative classification in the matters now in hand. As already stated, the part of the ordinance involved in People v. Gidaly, Cr. A. No. 1602, is that prohibiting picketing of a place of business where less than a majority are on strike, and People v. Aragon, Cr. A. No. 1607, involves that part of it prohibiting picketing by persons who are not or have not been continuously for at least thirty days employees at the place of business picketed. To sum up the effect of these provisions, if a majority of the "bona fide" employees at a place of business or at all the employer's places of business, go on strike, such place may be picketed, but if less than that number strike none of them may picket; and no matter how many strike, persons not employees may not join them in picketing and employees who have been such less than thirty days continuously may not picket. How do these discriminations tend to promote the objects of the ordinance? Those objects, as we gather them from a consideration of its various prohibitions, are, first, to prevent obstruction of streets and other public places, and other interference with their use for passage; second, to prevent, in labor disputes, acts of intimidation and violence directed at persons engaged in those disputes or at other members of the public; and, third, to assure to the public and those affected by such disputes freedom from unlawful disturbance and annoyance arising from picketing.
 Considering the first of these objects, it is manifest that it can make no difference whether a picket is or has been [35 Cal.App.2d Supp. 766] for thirty days an employee of the place picketed, and that interference with passage over the streets is not less likely when a majority of the employees are on strike. Moreover, that object seems well accomplished by section 10, which prohibits a variety of acts which would hinder or prevent free passage along streets and other public places. As to the second and third objects, we note that sections 7, 8, and 9 of the ordinance prohibit any person, be he picket or not, from engaging in acts of intimidation or coercion in connection with any place of business, section 2 thereof specially forbids pickets to do so, and sections 7, 8, and 9 prohibit also a variety of acts which might amount to mere annoyance or disturbance. With the activities of pickets thus limited, what difference can it make to the accomplishment of the objects of this ordinance whether or not they are employees at all or have been such for any particular length of time, or how many of the employees at the place picketed are on strike? We can see no such difference.
 Even were there no such other limitations on pickets, the classifications now under consideration would have no just or reasonable relation to the objects of the legislation, to use the phraseology of Bayside Fish etc. Co. v. Gentry, supra, 297 U.S. 422, 429, [56 S.Ct. 513, 80 L.Ed. 772, 777]. There is nothing in any experience to which our attention has been called and we see nothing in reason to suggest that pickets at a place where a minority of the employees are on strike will be any more given to violence, obstruction of streets, intimidation, annoyance and disturbance than those where a majority strike. Neither does it appear that the length of time a picket has been employed at the place he pickets bears any rational relation to the probability of his acting in a manner contravening the objects of this ordinance. We find no rational ground to suppose that a picket who is not employed at the place picketed, who may be a friend or relative of an employee, a person hired for the purpose, or an official of some union interested in the strike, will be any more active or urgent about the business of picketing or any more likely to engage in obnoxious conduct, than an employee. The latter has a personal interest in winning the strike, which furnishes him as strong an incentive to let the end justify the means, as any other picket is likely to have. The provision of the ordinance discriminating between employees and others and denying the latter [35 Cal.App.2d Supp. 767] the right to picket, comes directly within this declaration made by the United States Supreme Court, arguendo, in Truax v. Corrigan, (1921) 257 U.S. 312, 335 [42 S.Ct. 124, 66 L.Ed. 254, 264, 27 A.L.R. 375, 387]: "Suppose the legislature of the state were to provide that such acts as were here committed by defendants, to wit, the picketing or patrolling of the sidewalk and street in front of the store or business house of any person, and the use of handbills of an abusive and libelous character against the owner and present and future customers, with intent to injure the business of the owner, should be a public nuisance and be punishable by fine and imprisonment, and were to except ex-employees from its penal provisions. Is it not clear that any defendant could escape punishment under it on the ground that the statute violated the equality clause of the 14th Amendment? That is the necessary effect of Connolly v. Union Sewer Pipe Co., 184 U.S. 540 [46 L.Ed. 679, 22 S.Ct. 431]."
 Again we call attention to the fact that in the situations selected by this ordinance for its permissive effect the picketing of a place of business may be done in such manner as is likely (and ordinarily its object would be) to induce persons not to enter or leave the place, not to work or seek employment there, and not to buy, sell, deliver or receive goods there, subject to other provisions of the ordinance against violence, coercion, intimidation and annoyance and some other limitations not now requiring consideration. No question arises as to the prohibition of such picketing altogether, for there is no such prohibition, but only as to the reasonableness of the standards bY which the ordinance has selected the persons by whom and the circumstances under which it may be done. By the established rules of constitutional law, such standards may not be arbitrary, but must have some reasonable relation to the object and purpose of the ordinance. Finding no such relation, we hold the prohibitions here in question invalid. The ordinance makes other discriminations, not here discussed, in its definitions of "bona fide strike" and "bona fide employee". The facts of these cases do not raise any question of the validity of those other discriminations, for it does not appear that any of the appellants is in any of the classes against whom such discriminations run. We have for that reason refrained from expressing an opinion regarding any of the other [35 Cal.App.2d Supp. 768] discriminations. For similar reasons we do not decide upon the validity of various other provisions of the ordinance not involved in the charges made against the defendants.
 The judgments are reversed and the causes are remanded to the municipal court, with directions to dismiss the complaint in People v. Gidaly, Cr. A. No. 1602, and to dismiss count 2 of the complaint in People v. Aragon, Cr. A. No. 1607. The appeal from the order denying motion to quash and dismiss the complaint, in Cr. A. No. 1607, is dismissed.
 Bishop, J., concurred.
 Schauer, J.,
 Concurring.
 I concur. I am in accord with the conclusion reached by my associates, and with the propositions of law which support it, but think, however, that as an even more fundamental and essential constitutional right (than that which is made the basis of the foregoing opinion) has been discussed by counsel in presenting this case and is pertinent to this decision, that it should not go unmentioned in our opinion. I refer to the right of free speech together also with the independent but constitutionally cognate and equal rights of freedom of press and peaceable assembly. (U.S. Const., Amendments I and XIV.) Amendment I of the United States Constitution, which declares those liberties, is, in effect, made operative on the several states by Amendment XIV (Hague v. Committee for Industrial Organization, (1939) 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423]; see, also, Civil Rights Act of 1871, 17 Stats. at L. 13) and such rights are redeclared in the California Constitution (sec. 9, art. I).
 One cannot read the provisions of the ordinance here involved without knowing that it affects those constitutional rights in some measure. As was stated in the "Affirmative Argument on Proposition No. 1 to Regulate Picketing", which was a paper officially mailed to the voters preceding the September 16, 1938, election, at which the ordinance was adopted, "The primary purpose of picketing is to advertise a dispute between employer and employees." As the "display of a flag or banner 'as a sign, symbol or emblem of opposition to organized government'" constitutes an exercise of the right of freedom of speech (Stromberg v. California, (1931) 238 U.S. 359, 365 [51 S.Ct. 532, 75 L.Ed. 1117, [35 Cal.App.2d Supp. 769] 1121, 73 A.L.R. 1484]), so does picketing, to advertise a dispute between employees and employer, like other methods of expression or means of publication, likewise constitute an exercise of that right. Since it may differ, in its forms of manifestation, from the ordinary spoken or printed word, it may well be subject to reasonable regulations which might not be appropriate to the latter, but it is important that we frankly recognize it as a form of exercise of the fundamental liberty of speaking, writing and publishing one's views so that we shall not misapprehend the standards by which the validity of any regulations affecting it are to be tested. Pertinently, I find that the regulations involved in these cases cannot be sustained when so tested.
 The term "to picket" is defined, in the ordinance, to include walking or riding back and forth, or standing, sitting or remaining, in front or in the vicinity of, any place of business or residence or its approaches. A "bona fide employee" is one who, among other things, has been continuously employed by the employer, for not less than 30 days. On conditions enumerated a "bona fide employee while carrying on lawful picketing", which, among other prerequisites, entails declaration of a strike by vote of a majority "of all the bona fide employees of all classes of an employer" for the limited purpose of obtaining or resisting "a change in wages, hours or conditions of their employment after demands made therefor", is authorized to "carry an arm band or other banner" of a limited size which is required to set forth "(i) the name or initials of the organization represented by the person wearing or carrying such arm band or other banner, and (ii) the word 'picket'", and such arm band or banner, may, says the ordinance, "also set forth (iii) the statement that a strike is in progress at the place of business so being picketed, including the name or address of such place of business, but such arm band or other banner shall have thereon no other words, lettering, numbering, picture or design whatsoever". The word "banner" is defined, in such ordinance [section 1 (e)] to "mean and include, but not be limited to, any banner, transparency, paper, sign, insignia, badge, emblem, symbol, ribbon, card, picture, arm banner, band or sign, hat band or sign, sash, waist band, banner or sign". Section 5, otherwise than as limited by sections 4 and 6, declares that "It shall be unlawful for any person to carry, show or display any banner in or upon [35 Cal.App.2d Supp. 770] any public place, or in or upon any private place within the view of any person who is in or upon any public place, in front of, in the vicinity of, or about any place of business, or any of the approaches ... (ii) in a manner calculated or with the intent to induce or influence any person to refrain from entering, occupying or leaving any place of business" or, generally, from having any transaction therewith or therein. Lastly, for the purposes of this premise, section 4 (c) provides that "The activity of any such bona fide employee while so picketing such place of business shall be limited to patrolling upon the public places in front of or about such place of business and to wearing or carrying such an arm band or other banner as is permitted by section 6."
 Thus we see that the ordinance, among other things, (1) permits a majority of all classes of employees to symbolize or otherwise express (under the conditions prescribed) their statement that a strike is in progress but denies that right to a minority; (2) permits "a bona fide employee" (on conditions) to "picket" but denies that right to any person who has not been continuously employed by the employer for not less than 30 days; (3) permits the majority (on conditions) to state on a banner that a strike is in progress but denies them the right to make that statement orally; (4) permits the majority to say (on conditions on a banner) that a strike is in progress but strictly censors what they may say concerning that fact; (5) permits a majority to advertise (on conditions) by picketing that a dispute between employees and employer exists but forbids both majority and minority, at the time and place, or in the manner, of such advertising, to express their views or present arguments on the merits, or even to define the grounds, of the dispute. Furthermore, by such ordinance (6) not only are all persons generally forbidden to "picket", which means that they may not walk or ride back and forth or sit, stand or remain in the vicinity of the place of business involved, except on the conditions and with the qualifications prescribed, but also, by the strict terms of the law, no person--not even a regularly employed newsboy--"upon any public place, or in or upon any private place within the view of any person who is in or upon any public place, in front of, in the vicinity of, or about any place of business ... in a manner calculated or with the intent to induce or influence [35 Cal.App.2d Supp. 771] any person to refrain from entering, occupying or leaving any place of business" or, generally, to refrain from having any transaction therein or therewith, may carry, show or display any "paper" (secs. 1 (e), 4 (c), 5 and 6). A newspaper or handbill carrying the story of a labor dispute and expressing the claims of either side would clearly be prohibited from display to the public (whether on public or private property) in the vicinity of a place of business at which a strike was in progress. The practical effect of the sum of the foregoing epitomized elements of the "regulation" is a comprehensive prohibition of the exercise by an individual, in the vicinity of a strike, of his freedom of speech and publication.
 It seems a work of supererogation to cite authorities, other than Amendments Numbers I and XIV of the United States Constitution, and section 9, article I, of the Constitution of California, to the point that each of the six propositions above enumerated, as well as their combined effect, is constitutionally untenable. It is elementary that the individual's or minority's right to exercise freedom of speech is not a privilege or a provisional property which is subject to the control of the majority; on the contrary, it is an essential characteristic of our constitutional democracy that that right, like those of freedom of press and peaceable assembly, shall perdure, inherent and implicit in the individual, subject to personal responsibility for abuse and to reasonable and necessary regulation as to time and place and circumstances, but not, as such, in scope or content, of exercise. As was said by Mr. Justice Brandeis (joined by Mr. Justice Holmes) in concurring in Whitney v. California, (1926) 274 U.S. 357, 377, 378 [47 S.Ct. 641, 71 L.Ed. 1095, 1106, 1107], "Fear of serious injury cannot alone justify suppression of free speech and assembly. Men feared witches and burned women. It is the function of speech to free men from the bondage of irrational fears. ... Prohibition of free speech and assembly is a measure so stringent that it would be inappropriate as the means for averting a relatively trivial harm to society. A police measure may be unconstitutional merely because the remedy, although effective as means of protection, is unduly harsh or oppressive. ... The fact that speech is likely to result in some violence or in destruction of property is not enough to justify its suppression. There must be the probability of [35 Cal.App.2d Supp. 772] serious injury to the state." And to the same effect is this language in Herndon v. Lowry, (1937) 301 U.S. 242, 258 [57 S.Ct. 732, 81 L.Ed. 1066, 1075], "The power of a state to abridge freedom of speech and of assembly is the exception rather that [sic] the rule and the penalizing even of utterances of a defined character must find its justification in a reasonable apprehension of danger to organized government. The judgment of the legislature is not unfettered. The limitation upon individual liberty must have appropriate relation to the safety of the state. Legislation which goes beyond this need violates the principle of the Constitution."
 "Democracy", aptly says United States Commissioner of Education John W. Studebaker, at page 135 in "Plain Talk" (National Home Library Foundation, 1936), "is a technique by which the will of the majority becomes law, and by which the right of the minority to attempt to become the majority by peaceful means is scrupulously protected." If we accept that definition, then we must acknowledge the right of the minority striker to "attempt to become the majority by peaceful means", and we are bound to scrupulously protect that right. While picketing, like other personal activities, is, as heretofore observed, subject to reasonable regulation in its exercise, I find nothing in the California Constitution to make inapplicable or inappropriate the statement of the United States Supreme Court in Senn v. Tile Layers Protective Union, (1937)301 U.S. 468, 481, 482 [57 S.Ct. 857, 81 L.Ed. 1229, 1238], that "There is nothing in the Federal Constitution which forbids unions from competing with non-union concerns for customers by means of picketing as freely as one merchant competes with another merchant by means of advertisements in the press, by circulars, or by his window displays." We have here no question as to absolute prohibition, under the police power, of a vicious or non-useful act--the ordinance, in so far as the provisions under consideration are concerned, is manifestly intended and expressed to be regulatory of a recognized lawful and useful activity. The police power--the source of authority for most legislative remedies for municipal ills --is one of the most essential powers of government and one that is the least limitable (5 Cal.Jur. 687), but to be valid as affecting a useful and innocent endeavor it may not go beyond reasonable regulation (5 Cal.Jur. 709); the Constitution fixes its outermost limits. To retain the character [35 Cal.App.2d Supp. 773] of being merely regulatory, legislation must not arbitrarily prohibit the exercise of any right and even if otherwise validly regulatory it will, as a general rule, fall if it at all impairs or unnecessarily impedes the exercise of a fundamental personal liberty such as a freedom of speech. Certainly it will be held void if it unnecessarily or harshly impairs that liberty; it should be so held for two reasons: (1) Whatever the ill such a remedy is not constitutionally available and (2) if it were available the remedy would be worse than the ill.
 While a law may be valid which in effect punishes the use of language which has the effect of inciting the unlawful use of violence or the commission of crime (Stromberg v. California (1931) 283 U.S. 359, 368, 369, [51 S.Ct. 532, 75 L.Ed. 1117, 1123, 73 A.L.R. 1484]), the end may not (save possibly in such extraordinary situations as are mentioned in the authority next hereinafter cited) be attained through the medium of censorship or previous restraint. (Near v. Minnesota, (1930) 283 U.S. 697, 716, 719, 720 [51 S.Ct. 625, 75 L.Ed. 1357, 1367, 1369]; Lovell v. Griffin, (1938) 303 U.S. 444, 451 [58 S.Ct. 666, 82 L.Ed. 949, 953]; Hague v. Committee for Industrial Organization, (1939) 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423].) "These rights [freedom of speech, press and assembly] may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their legislatures [or by the initiative] may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed." (DeJonge v. Oregon, (1936) 299 U.S. 353, 364, 365 [57 S.Ct. 255, 81 L.Ed. 287, 284].)
 It is suggested by my learned associates that the proposition I have discussed is not raised by the facts of the cases before us. I cannot agree with that suggestion.
 My opinion that picketing in general partakes of the nature of an expression or publication of an idea has already been stated and as to the more specific provisions of the ordinance which have been mentioned, although no defendant on this appeal is charged, in his picketing, with making an oral statement regarding an industrial dispute, with stating orally or on a banner or paper any fact censored by the ordinance, or with otherwise offending than is [35 Cal.App.2d Supp. 774] denoted by the broad term "picketing", I think that, in appraising the constitutional validity of the ordinance in so far as any of its regulatory features directly or incidentally affects freedom of speech, it is proper to examine not an isolated segment but all the component parts affecting that particular liberty. By so doing we can the better determine whether the precise and directly pertinent impingement on such liberty is an inconsequential impediment or a substantial impairment. As we held in People v. Tilkin, (1939) 34 Cal.App.2d Supp. 743 [90 PaCal.2d 148], that "to discover the creation of these crimes in the ordinance, section 4 must be added to section 3, and sections 4 and 6 added to section 5", so here, to fairly ascertain how and to what extent, and whether validly in these cases the ordinance directly or incidentally regulates or curbs freedom of speech, we should add sections 4, 5 and 6 to section 1, and thus view the forest instead of only the single sapling. From viewing the forest, I conclude that the sapling does not merit propagation--it can bear no fruit. By the standards of civil liberty, in each of the cases now before us, the provisions of the ordinance on which each respective conviction is based are void, not only for the reasons elucidated in Mr. Presiding Judge Shaw's opinion, but also in that each of such provisions transgresses, in the particulars hereinabove delineated, the irremissibly vetitive provisions of Amendment Number XIV of the United States Constitution, making applicable here the rights declared in Amendment I, and of section 9, article I, California Constitution.
 On August 16, 1939, the Appellate Department of the Superior Court denied a rehearing, and filed the following opinion:
 The Court.
 [4] By petition for rehearing, respondent urges that there is no common-law right to picket, even peacefully, and hence the ordinance in question does not deprive would-be picketers of any right they would otherwise have, and apparently this is deemed to furnish a reason why a discrimination, even though arbitrary and unreasonable, may be made in the ordinance without subjecting it to objection on that ground. We are somewhat at a loss to know what is meant by the statement that there is no common-law right to picket in California. Certainly, in the absence of legislative prohibition or judicial restraint, [35 Cal.App.2d Supp. 775] any person may use the public streets and other public places for walking or patrolling to and fro, or for standing, sitting or remaining, in front of any place of business, or doing any of the other acts comprehended within the definition of picketing given in this ordinance, or may, if the term "picketing" is used in the broader sense adverted to in Judge Schauer's concurring opinion, use his picketing as a means of uttering, conveying or publishing an idea, and no act of legislation is needed to confer upon him the right to do so. (We are, of course, not referring to possible violations, by persons so picketing, of laws directed at other sorts of conduct.) But were it otherwise, a legislative act which undertakes to confer a privilege on any class of citizens is subject to section 21, article I of our state Constitution, quoted in our opinion, and also to the Fourteenth Amendment.
 [5] We are also reminded by respondent that majority rule is a fundamental tenet of our constitutional system. This may be so, but it is not universally applicable. As suggested in Judge Schauer's concurring opinion, the Bill of Rights has numerous provisions whose purpose and effect is to prevent a majority from imposing their will on a minority in matters deemed of sufficient importance to justify such protection. Our attention is further called to various other purposes for which a majority classification has been used. When a matter of classification is involved, the question is not, is the classification valid for any or some purposes, but is it valid for the particular purpose for which it is used. The general use of a majority vote as the means of determining ordinary elections, or its adoption for selection of a bargaining agent for the employees in a business, or its use by a labor union in determining whether to strike, all of which have been referred to, may be proper enough for the purposes there in hand, but it does not follow that the same criterion may be used for the quite different purposes of this ordinance. In our opinion, it has no rational relation to those purposes.
 [6] It is also insisted that we have overlooked the rule that in the absence of facts proved in the case or judicially known on which to base a decision holding a law invalid, a court must presume that there were facts known to the legislative agency which justify it and warrant the classification made. We have had this rule in mind. But the [35 Cal.App.2d Supp. 776] court may take notice of the propensities and tendencies of mankind, and of their manifestations as disclosed by current history. We cannot avoid the knowledge that, at least in this country, the great bulk of the picketing in labor disputes has been done by employees who have gone on strike, that many of the most serious riots, acts of violence and other breaches of the peace which have occurred in such cases have happened where a majority or more of the employees at some place of business had struck, and that the participation of picketing employees is such affairs, whether as actors or victims, has not been substantially less, in proportion to their numbers, than that of other persons acting in sympathy with them. In the face of those facts a limitation of picketing to employees and to cases where a majority of employees are on strike, permitting it where those conditions exist and prohibiting it elsewhere, cannot have any reasonable relation to the legislative purposes embodied in this ordinance. That those purposes are as stated in our opinion is not disputed in the petition for rehearing, and we see no reason to doubt the correctness of our conclusion thereon.
 The petition of respondent for a rehearing is denied in both of the above-entitled cases.