GEORGE D. HAMILTON and Others v. VILLAGE OF DETROIT and Others.[1]

December 20, 1901.

Nos. 12,795—(138).

Village Bonds—Laws 1893, c. 200.

To justify the issuance of bonds, under the provision of Laws 1893, c. 200, that act must be strictly complied with. The village council or other governing body may, of its own motion and independently of the voters and freeholders, determine, by resolution duly passed and recorded, to raise a specified amount of money for any of the purposes therein specified, or such council may proceed upon the presentation of a petition signed by at least twenty-five of the voters and freeholders residing in such village. The council must proceed one way or the other. If its action is predicated upon a petition, the qualifications and competency of the signers must be in strict accordance with the statute.

[1] Reported in 88 N. W. 419.

Petitioner not a Voter.

> One of the signers of the petition herein involved was a freeholder of the village, but was not a voter therein. *Held*, that testimony as to his disqualification as a voter was admissible, under the pleadings.

Freeholder.

> Another signer held no real estate in his own name in the village. He was a married man, residing in a house built on a village lot owned by his wife, the same being her statutory homestead. *Held*, that he was not a freeholder, within either the statutory or common-law definition thereof.

Injunction.

> The plaintiffs were taxpayers of the village in question. *Held*, upon showing that the petition was not signed by the requisite number of voters and freeholders residing in the village, that they were entitled to a permanent injunction restraining the village council from issuing bonds authorized at a village election based upon such a petition and ordered by such council.

Action in the district court for Becker county to restrain defendants, village of Detroit and its officers, from issuing certain bonds for the purchase and construction of an electric-lighting plant. The case was tried before Baxter, J., who made findings of fact and as conclusion of law found that plaintiffs were entitled to a permanent injunction as prayed. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*Countryman & Morrison*, for appellants.

*Harris Richardson, Jeff H. Irish* and *C. M. Johnston*, for respondents.

COLLINS, J.

This cause has heretofore been before this court on appeal from an order dissolving a temporary injunction. 83 Minn. 119, 85 N. W. 933. The nature thereof, some of the allegations of the pleadings, and other matters necessary to an understanding of the facts will be found stated in that opinion. Upon remittitur it was brought on for trial upon the merits.

In the complaint it was alleged that the petition presented to the village council was not signed by twenty-five of the voters and freeholders thereof, and also that more than two of the signers of

said petition were not freeholders of said village at the time the petition was signed, or at the time it was presented to the council, or at the time of the election. The court below found these allegations true; that is, found, generally, that the petition was not signed by twenty-five voters and freeholders of the village, and, further, that more than two of the signers were not freeholders therein. Its conclusion of law was that plaintiffs were entitled to a perpetual injunction against defendants as demanded in the complaint.

1. It is contended by the attorneys for the defendant village that the validity of the election does not depend upon the question, made prominent in the court below, as to whether or not the petition was signed by twenty-five voters and freeholders of the village.

At the conclusion of the opinion before mentioned reference was made to this question, and it was said that if the petition was not so signed, and the trial court so found as a fact, the election was unauthorized, and the subsequent proceedings a nullity. It is possible that a part of this remark was obiter, but, conceding this, there can be no doubt that, in order to comply with the statute in question (Laws 1893, c. 200, § 2), a village council must, of its own motion, determine, by resolution duly passed and recorded, to raise the amount of money required for the purposes therein provided for, or it must act upon a petition addressed to it, and signed by at least twenty-five of the voters and freeholders residing in the village. A village council is granted full power and authority to proceed of its own motion without any petition, and to order an election, and it is also required to order such an election upon the presentation of a petition conforming to the statute. If such a petition is presented, the duty is imperative, and it must proceed without regard to the individual views or interests of its members. Either method may be adopted to obtain an expression of the wishes of the voters, but it must be one or the other.

In this case it is evident, from the preamble and resolution, that the council did not act of its own motion, but simply and solely because of the petition, which, on its face, complied with the statute, and upon investigation, when presented, seemed to be in strict

compliance therewith. There is no foundation for the claim that the council acted of its own motion, for a bare reading of the official records conclusively establishes the contrary. It was a prerequisite that the petition should be signed by at least twenty-five of the voters and freeholders of the village. These requirements or qualifications for signers were jurisdictional, and without strict compliance with the statute in this respect, and without such a petition the council had no dominion over the subject, or power to act, except of its own motion. The authorities are abundant upon the proposition that to justify the issuance of municipal bonds based upon a petition, and the consequent taxation to meet their payment, the antecedent proceedings must be strictly according to statute, and the jurisdiction of the municipal authorities to issue must appear from the records. See 15 Am. & Eng. Enc. 1277, and cases cited.

2. We now come to an examination of the findings of fact, in effect, that the petition was not signed by twenty-five voters and freeholders of the village.

It bore the signatures of twenty-six persons. Upon the trial there was conclusive evidence that one of the signers (Priest) was not a voter, although he was a resident freeholder. He was a British subject. To escape the inevitable result of this proof, defendants' counsel took the position below that all testimony tending to establish Priest's disqualification as a voter was inadmissible under the pleadings. We cannot concur in this, for the complaint distinctly alleged that the petition was not signed by twenty-five voters and freeholders. That, in addition, it specially alleged that more than two of the voters were not freeholders did not affect or qualify the prior and more general allegation, and the testimony as to Priest's disqualification was properly received. His signature must therefore be ignored when considering the sufficiency of the petition, and this leaves but twenty-five signers, all of whom must have been properly qualified in order to justify the action of the council. It appears from the findings that two, at least, of these signers were not freeholders, but the court did not specify just who they were; it did not name the persons. If, therefore, it is established by the evidence that a single signer in

addition to Priest was disqualified, the conclusion of law was correct, and must be upheld; for that would leave only twenty-four competent signers where twenty-five were absolutely required. Under the general finding heretofore mentioned, it is immaterial which one of the remaining twenty-five was incompetent.

Counsel for the defendants contend that we may consider a note or memorandum appended to the conclusion of law, from which it appears that the trial court was of the opinion that one Jordan, a signer, was not a freeholder, and of three signers, whose qualifications were challenged, he was the only incompetent, and that if we should come to the conclusion that Jordan was a freeholder the order appealed from must be reversed. We cannot concur. If counsel desired a finding of fact as to which of these twenty-four persons the trial court held to be incompetent and disqualified as a signer, a motion should have been made for that purpose. This was not done, and the well-known rule of this court, that a note or memorandum cannot be treated as equivalent to a finding of fact, must be applied. If, therefore, the court was right in its conclusion, and from the testimony it appears that a single one of the signers, no matter who, was not qualified as a petitioner, the order will have to be affirmed. On the findings, Jordan's status becomes immaterial, if the evidence established the disqualification of some other person.

We are clear that Nelson, one of the signers, was not a freeholder, within any of the definitions. He held no village real estate in his own name. It did appear that he was a married man, residing in the village, in a house built on a lot owned by his wife, the title to the property being in her name. It was her statutory homestead, not his; so the real question is whether he had a freehold estate in a statutory homestead, the property of his wife. Under G. S. 1894, § 4366, it is provided that estates of inheritance and for life shall be denominated estates of freehold. According to this, a freeholder must be defined, under our statute, as one who has an estate of inheritance or an estate for life in real property.

The right initiate and inchoate which a husband or wife has in a statutory homestead owned by his or her spouse is not easily

distinguishable from the right held by him or her in real property, belonging to the other and not occupied as a homestead. The homestead right or interest is conditional. If there be no children or lawful issue of a deceased child living at the decease of the owner, the homestead descends in fee to the surviving husband or wife. If there be a child or the issue of any deceased child living at the death, the right is a life estate. The right or interest in other real estate is also conditional, by the terms of section 4471. As to the homestead, the right accruing to the survivor is just as intangible, inchoate, and contingent as is the right to other real property. It may be a right or interest, but it does not become an estate in the survivor until the death of the owner. A husband may during coverture abandon his homestead, and he may be .deprived of it through the foreclosure of a mechanic's lien. It may be cut down in amount, or altogether abolished, by a legislative act; for the provision of the state constitution (article 1, § 12) does not prescribe the nature of the property to be exempted from seizure and sale. It is imperative that it be reasonable in amount. The character of such property is to be prescribed by legislative acts, but the exemption need not necessarily include any real estate.

The interest of a husband in his wife's homestead while she is living seems to be less than the right of the wife in his homestead. She may abandon it at will. If she should remove therefrom, we are not advised of any statute which would give the husband the right to remain thereon, or assert any claim to the same as a homestead. He would then be compelled to secure a homestead for himself or go without. The rights of the wife in her husband's statutory homestead are recognized by section 5521, by which homestead rights are fixed in this state, but the rights of the husband during the life of his wife in her homestead are not referred to. They seem to be wholly ignored. He is nowhere recognized by the statute which creates her homestead until she dies. More than this, by section 5531 the real estate of the wife is her separate property during coverture, and she may receive, take, hold, use, and enjoy every part of it, together with the rents, issues, and profits, wholly free from the control of her husband.

Under the provisions of section 5532, she can lease any or all of her real property for a term not exceeding three years, without his consent, and by such a lease and a surrender of possession the wife can at any moment deprive the husband of any present interest in her homestead. His interest in this particular property depends entirely upon her concurrence, and it cannot become vested as an estate until her death and his survivorship. Until these things occur, his interest is wholly contingent.

To say that this intangible, inchoate, and conditional interest, nothing more than an expectancy, is a freehold estate, is not only a disregard of the statutory, but also of the common-law, definition of a freehold. His life estate may be initiated during coverture, but it is not consummated until her decease, under the conditions before mentioned. It then becomes a vested right, and would undoubtedly be regarded as a freehold estate. See McCarthy v. Van Der Mey, 42 Minn. 189, 44 N. W. 53.

If the position of counsel as to the husband could be sustained, it would necessarily follow that every wife who is residing with her husband upon his statutory homestead is a freeholder; for no distinction between the husband and the wife in respect to the nature of their rights or interests can be pointed out. We should have two freeholders for every homestead owned and occupied by a married man or woman. Counsel for the defense have cited the case of Hughes v. Milligan, 42 Kan. 396, 22 Pac. 313, in which it was held that a husband who resides with his wife upon land of which she has the title, occupying the same as a homestead, has a freehold estate. It is asserted in that opinion that at common law the dower estate in real property was a freehold, and that an estate by curtesy was also a freehold. We do not so understand the rule at common law. Each of those estates was declared to be inchoate or initiate prior to the decease of the spouse. On the happening of the death, they became vested or consummate, and necessarily freehold estates. It was also said in that opinion that in several states of the Union the interest of a wife in her husband's homestead has been denominated a freehold estate. No authorities are cited in support of this statement. Counsel have

not called our attention to a single one outside of the state of Kansas, and we have found none.

3. It is contended by defendants' counsel that plaintiffs are not entitled to a permanent injunction, because they did not show irreparable injury and loss by the issuance of the bonds. Certainly taxpayers might be irreparably injured by the issue of illegal bonds, for, if transferred into the hands of bona fide holders, collection could be enforced, without regard to the illegality. Fulton v. Town of Riverton, 42 Minn. 395, 44 N. W. 257.

By the issuance of such bonds the burden of taxation is necessarily increased, and, there being no adequate remedy at law, the taxpaying property holder has a right in his own name to resort to equity, and restrain by injunction the issuance thereof. Hodgman v. Chicago & St. P. Ry. Co., 20 Minn. 36 (48). See also Sinclair v. Board of Co. Commrs., 23 Minn. 404; Grannis v. Board of Co. Commrs., 81 Minn. 55, 83 N. W. 495, 15 Am. & Eng. Enc. 1255, and cases cited.

The order appealed from is affirmed.