ROBERT E. FERGUSON v. CITY OF MORRIS.[1]

May 29, 1936.

No. 30,946.

[1]Reported in 267 N. W. 264.

*Kyle & Kyle* and *O. K. Alger,* for appellant.
*Field & Field* and *T. J. Mangan,* for respondent.

HOLT, JUSTICE.

The city of Morris appeals from an order denying its motion for a new trial in an election contest wherein the court declared a special election held June 18, 1935, void. The city operates under a home rule charter, and its governing body is a commission consisting of the mayor and two commissioners. In the spring of 1935 the commission passed five ordinances, numbered 163, 164, 165, 166, and 167—No. 163 to issue and negotiate bonds of the city for the purpose of establishing and constructing a municipal light, heat, and power plant; No. 164 to buy for $1,700 from the Great Northern Railway Company a described plot of land in the city for a site for the plant; No. 165 to accept the bid of West Central Construction Company to construct the power house for $25,688; No. 166 to accept the bid of the Consolidated Electric Company to furnish Diesel engines, machinery, and equipment for generating the electricity for $74,591; and No. 167 to accept the bid of the Donovan Construction Company for the construction of the distributing system for $52,228. The contracts to be entered pursuant to the last numbered four ordinances were to be paid out of the money to be raised from the sale of the bonds issued pursuant to ordinance numbered 163. Under the charter an ordinance does not take effect until 15 days after its final publication. If before the expiration of that time a petition, signed by a certain per cent of the qualified electors of the city protesting against the ordinance adopted, be presented to the commission, it shall submit the same to a

vote of the electors. Such petition was properly presented to the commission protesting against these five ordinances, whereupon the commission called a special election to be held June 18, 1935. It was so held, the votes were canvassed, and each ordinance was declared approved. The contest was thereupon instituted.

Many grounds for the contest were specified; but, by the findings of the court, these three were found true and were held to nullify the election: (1) Failure to publish the ordinances in the official newspaper at least once and at least five days before the election; (2) posting the notices of election one day late; and (3) inadequacy of the ballots as to all the ordinances except No. 163. Appellant, while conceding that these irregularities might furnish grounds for enjoining the election, vigorously contends that after the election is held and it appears that a full vote was had and there is no evidence that any voters were misled by the irregularities complained of, or that they failed to exercise the right to vote by reason thereof, the election should not be nullified. It may be conceded that the correct rule is stated in 20 C. J. § 222, p. 181:

"Elections should never be held void unless they are clearly illegal; it is the duty of the court to sustain an election authorized by law if it has been so conducted as to give a free and fair expression of the popular will, and the actual result thereof is clearly ascertained."

Our own decisions are in line with the above pronouncement. Taylor v. Taylor, 10 Minn. 81 (107); Edson v. Child, 18 Minn. 43 (64); Pennington v. Hare, 60 Minn. 146, 62 N. W. 116; Backus v. City of Virginia, 123 Minn. 48, 142 N. W. 1042; McEwen v. Prince, 125 Minn. 417, 147 N. W. 275; Clayton v. Prince, 129 Minn. 118, 151 N. W. 911, Ann. Cas. 1916E, 407; In re Special Election in Sch. Dist. No. 68, 183 Minn. 542, 237 N. W. 412. Appellant's charter, § 43, provides:

"No informalities in conducting municipal elections shall invalidate the same, if they be conducted fairly and in substantial conformity with the requirements of this Charter."

In respect to the first ground upon which the court invalidated the election, namely, the failure to publish the ordinances after presentation of the referendum petition and prior to the election, appellant claims that the provision for publication is applicable only to initiative elections and not to referendum elections; and, further, that there is no occasion for publication in case of the latter for the ordinances have been published after the commission has adopted them, which is not the case of ordinances first proposed by the initiative method. Chapter 6 of the charter consists of §§ 48, 49, and 50. The caption to § 48 is "Recall, Initiative and Referendum"; to § 49 is "Initiative"; and to § 50 is "Referendum." Not much importance can be given to the caption. It will be noticed that the caption to § 48 includes that of §§ 49 and 50, yet there is no reference to any step in § 48 to an initiative or referendum proceeding. Section 50 provides:

"No ordinance, except emergency ordinances passed by the Commission, shall go into effect before fifteen (15) days from the time of its final publication, except when otherwise required by the general laws of the State, or by the provisions of this charter.

"If during said fifteen (15) days a petition, signed by qualified electors of the City equal in number to at least twenty (20) per cent of the total number of ballots cast at the last preceding general municipal election, protesting against the passage of such ordinance, be presented to the Commission, the same shall thereupon be suspended from going into operation; and it shall be the duty of the Commission to re-consider such ordinance, and if the same be not entirely repealed, the Commission shall submit the ordinance, as provided in Section forty-nine (49) of the Charter, to a vote of the electors of the City, * * *."

The section also states that the provisions of §§ 48 and 49 "respecting the forms and conditions of the petition, and the mode of verification, certification and filing shall be substantially followed, with such modifications as the nature of the case requires." Section 49 has this paragraph:

"Whenever any ordinance or proposition is to be submitted to the voters of the City at any election, the Commission shall order such ordinance or proposition to be printed in the official newspaper, and published at least once and at least five (5) days prior to the election."

The language here is mandatory and must be held to apply to referendum elections. The commission neither ordered the ordinances in question to be printed after the petition was presented, nor were they printed or published in the official newspaper. It is plain that this provision is to permit the voters to examine at their leisure the ordinances to be approved or rejected by them. Long ordinances containing the terms of contracts of some magnitude cannot well be examined by the voters in the election booths, even if printed on the ballots, as they were not in this instance, nor any adequate summary of them. The fact that these ordinances had been published when the commission passed them, 15 days prior to the presentation of the protest petition, cannot be regarded as a substitute for this mandatory provision of the charter. The average voter does not follow the proceedings of the governing body of the city of his residence even though published in the official newspaper unless he is himself called to act thereon at an election. The posted notices of this election furnished no more information of the contracts proposed or ordinances than the ballots themselves. When it is considered that the subject of the referendum election is to let each voter determine whether the contracts or obligation of the city as contained in these ordinances should be entered into or should be rejected, it is obvious that the duty imposed on the commission by the charter to print and publish the same *in extenso* should be regarded as mandatory. It will not do to say that the voters should go to the offices of the city where the ordinances are on file to examine them, or they should hunt for some back numbers of the official newspaper where they could be found and examined. Notwithstanding § 43 and the lack of any provision in the charter declaring that a failure to comply with the above paragraph quoted from § 49 shall invalidate the election, we conclude, as did the courts

below, that it is the mandatory duty of the commission to print and publish the proposed ordinances to be submitted at a referendum election as provided in § 49. Statutes in respect to elections and city charter provisions on the subject differ so that authorities on the point now before us may perhaps not be found. However, the following, in a measure, support the conclusion reached by the learned trial court: Reed v. Wing, 168 Cal. 706, 144 P. 964; McLaughlin v. City of Newton, 189 Iowa, 556, 178 N. W. 540; City of Newport v. Glazier, 175 Ky. 608, 194 S. W. 771, 772; Ex parte Griggs, 63 Okl. 138, 163 P. 325; State ex rel. v. Dalles City, 72 Or. 337, 143 P. 1127, Ann. Cas. 1916F, 855. Of these cases the one from Kentucky is most in point. There the court said [175 Ky. 612]:

"It is admitted that the ordinance in question was not published as required by the statute, but insisted that the circulation of the referendum petition among the voters of the city, considered in connection with the large vote in favor of the ordinance, gave it sufficient publicity to justify us in upholding the election. The purpose of the publication is to inform the voters of the terms and provisions of the proposed ordinance, in order that they may vote intelligently on the question. To accomplish this purpose the legislature deemed it wise to afford every voter an opportunity to have a printed copy of the ordinance before him. The importance of following the statute is well illustrated in this case. The ordinance in question contains numerous provisions, some of which, to say the least, are of an unusual character. No voter could comprehend and appreciate the effect of these provisions unless he read them over and examined them with great care."

The same applies here. The ballots, except as to ordinance 163, gave no information as to the terms of the contracts to be entered into; as to none of them was the price stated; and as to No. 164 the site was not designated nor the vendor or price.

As to posting the notice of election one day late, it seems to us not a good reason for invalidating the election. Contestant suffered the election to be held notwithstanding he kept watch and

knew on the fifth of June that the notices had been posted on the fourth, when they should have been posted not later than the third of June. Again, the large vote cast at the election demonstrates that notice thereof had been as efficiently conveyed by the 14-days posting as if it had been 15 days. The trial court, while finding that the charter was not complied with in respect to the posting of the notices of election, apparently, did not conclude that this defect vitiated the election, and rightly so.

There is no provision in respect to the form of the ballot on a referendum election to adopt or reject ordinances such as these. To designate each ordinance by number only was rightly deemed insufficient. Here were five ordinances all relating to one project. No. 163, to issue bonds, was not intended to go into effect unless the other four also were adopted. The designation on the ballot of No. 163 as to subject matter may perhaps be adequate for the purposes of an election. But the others were certainly insufficiently described. As to none of them was the amount of the obligation to be incurred by the city in entering the contract stated. That the description of the four ordinances was radically defective appears from an inspection of a great number of the ballots defectively cast. Although all five were on one ballot and constituted one project, some were not voted, others were voted both "yes" and "no." There were 70 such defective ballots cast. Section 49 directs the commission to prepare suitable ballots for elections; and, since there is no specific direction as to the form, it was the duty of the commission to formulate the same so that the voter could use them intelligently. Therefore the commission has to use its best judgment, and the courts ought not to interfere unless the manner in which the ballots were printed and furnished the voters failed reasonably to disclose the purport of each ordinance the voter was to vote for or against. The court found:

"That said ballot did not contain a statement of either of said ordinances, nor did said ballot contain a summary of the contents of or refer to either of said ordinances, except that said ballot contained a statement of the respective titles of each of said ordinances.

That the respective titles of each of said ordinances (except ordinance No. 163), do not contain a statement of the amount of money to be spent, or indebtedness incurred, under the terms of either or any of said ordinances."

That finding is not open to dispute. We think the court rightly disposed of the contest.

Affirmed.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.

