242 Minn. 345 (1954)
IN RE ORDER OF EMMA C. SAMMONS, COUNTY SUPERINTENDENT OF SCHOOLS, COTTONWOOD COUNTY.
ELVIN ERICKSON
v.
EMMA C. SAMMONS AND INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 50, COTTONWOOD COUNTY.[1]
No. 36,275.
Supreme Court of Minnesota.
June 11, 1954.
*346 Johnson & Johnson by C.A. (Gus) Johnson II, for appellant.
Marvin H. Adams and Walter H. Mann, for respondents.
MATSON, JUSTICE.
Appeal from a judgment sustaining the validity of the consolidation of certain school districts.
In the early part of 1952, proceedings were initiated to consolidate School Districts 24, 41, 50, 64, and 76, and parts of Districts 13, 22, 44, 49, 58, and 71 into one district to be known as Independent Consolidated *347 School District No. 50 of Cottonwood county, Minnesota. These proceedings were carried out under the authority granted in M.S.A. 122.18 to 122.27. In accordance with the statutes, petitions were signed and acknowledged on dates ranging from February 4, 1952, to February 25, 1952. On March 31, 1952, the state commissioner of education approved the plat of the proposed consolidation; the election was set for April 15, and on April 1, 2, and 3, 1952, notices of the impending election were posted. Notice was also published on April 3, 1952. Though the petitions had been completed in February, they were not presented to the superintendent until April 8, 1952. On April 15, 1952, the election was held and by a vote of 132 to 70 the proposed consolidation was approved. Pursuant to this vote the county superintendent issued an order of consolidation for the establishment of Independent Consolidated School District No. 50. Elvin Erickson, a voter and taxpayer of District No. 41, Cottonwood county, appealed from this order to the district court, which on January 3, 1953, made findings sustaining the order of consolidation and ordered judgment accordingly. The appellant's motion for amended findings or a new trial was denied, and judgment was entered in respondent's favor on May 26, 1953. This appeal is from such judgment.
We are here concerned with the question of whether the consolidation proceedings herein must be declared invalid because, among other things, they were not conducted in the manner expressly prescribed by controlling statutes. In plain and simple language which any literate person can understand, §§ 122.19, 122.20, and 122.21, insofar as they are here pertinent, provide:
122.19. "* * * Before any steps are taken to organize a consolidated school district, the superintendent of the county * * * shall cause a plat to be made showing the size and boundaries of the proposed district, the location of schoolhouses in the several districts, the location of other adjoining school districts and of schoolhouses therein, and the assessed valuation of property in the proposed district, together with such other information as may be required, and submit the same to the state commissioner of education, who shall *348 approve, modify or reject the plan so proposed, and certify his conclusions to the county superintendent of schools." (Italics supplied.)
122.20. "After approval by the commissioner of education of the plan for the formation of a consolidated school district, an election on consolidation shall be held upon presentation to the county superintendent of a petition or petitions asking for the formation of a consolidated school district in accordance with the plan approved by the commissioner of education, signed and acknowledged by at least 25 per cent of the resident freeholders of each school district * * *." (Italics supplied.)
122.21, subd. 1. "Upon an election becoming callable under the provisions of section 122.20, said county superintendent shall, within ten days thereafter, cause ten days posted notice to be given * * *, and such notice shall be published once, at least ten days prior to the date of such meeting or election, in a newspaper, * * * of a special meeting or election to be held within the proposed consolidated school district at a time and place specified in such notice, to vote upon the question of consolidation." (Italics supplied.)
The above statutory sections were violated in the following particulars:
(A) In clear violation of § 122.19, the petitions referred to in § 122.20 were circulated and completed before the plat of the proposed consolidated school district had been approved by the state commissioner of education.[2]
(B) Despite the fact that pursuant to §§ 122.20 and 122.21 no election was callable (a) until after the plat or plan of school district consolidation had been approved by the state commissioner of education and (b) until after the presentation to the county superintendent of the proper petitions, the notice calling the election was posted on April 1, 2, and 3, and published on April 3, though the petitions were not presented until April 8. Clearly, the statutes were violated when the notice calling the election was posted and published prior to April 8, although such premature posting and publication gave the voters ten days' advance notice of the election.
*349 In addition to the aforesaid violations of §§ 122.19 to 122.21, appellant also asserts as a basis for holding the consolidation proceedings invalid that the petitions, notices of election, and the county superintendent's order of consolidation failed to give an adequate description of the school districts and the territory involved, and further that the petitions were not properly acknowledged.
1-2. No justification whatever exists for the statutory violations of the type involved herein since the statutory language is plain and direct. Undoubtedly if individuals in charge of school consolidation proceedings spent a few minutes in advance preparation by outlining the prescribed statutory steps, and the order and manner in which such steps must be taken, school consolidation programs would seldom be jeopardized by litigation, and the delay, as well as the heavy expense, of unnecessary litigation would be avoided. The question of the validity or invalidity of a school consolidation is not solved, however, merely by finding that the statutory violations were unjustifiable since the purpose of the litigation is not to punish a few local administrative officials for their negligent administrative acts but to determine, after an election has once been held, whether their failure to perform prescribed ministerial duties has enabled disqualified voters to vote; has deprived legal electors of their vote; or has deprived voters of the adequate notice and information reasonably necessary to enable them to vote with a deliberate appraisal of the merits, whereby the results of the election are made uncertain or inaccurate as a free and fair expression of the popular will.[3]
It makes little difference whether an election is determinative of a school consolidation or of the right to hold a public office since the fundamental principles governing the integrity of the ballot are substantially the same.
It is the general rule that, before an election is held, statutory provisions regulating the conduct of the election will usually be treated as mandatory and their observance may be insisted upon *350 and enforced.[4]After an election has been held, the statutory regulations are generally construed as directory[5] and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity.[6] Stated only in part and from a different point of view, the rule is that:
"* * * A statute which merely provides that certain things shall be done within a particular time or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, will be regarded as mandatory if the acts in question affect the merits of the election, and as directory if they do not affect its merits." 18 Am. Jur., Elections, § 206.
In implicit recognition of the above principles this court has uniformly refused to hold school district consolidation proceedings invalid for irregularities where the determinative election, despite such irregularities, resulted in a free and fair expression of the will of the voters on the merits.[7] We have adhered to the same principles *351 in passing upon the validity of elections to authorize the issuance of school bonds.[8]
Although the plat of the proposed school district had not been approved by the state commissioner of education prior to the circulation and completion of the petitions as required by statute,[9] it does not appear that such departure from the statutory requirements actually misled any of the voters or deprived them of the information reasonably necessary for a fair and free expression of their will on the merits. No evidence was adduced to show that the plat was not actually in existence when the petitions were signed. In any event the plat as prepared by the county superintendent was approved by the commissioner of education without change and was available for examination by all concerned a full 15 days before the election. Furthermore, each petition contained a description of the districts and parts of districts included in the proposed consolidation. The territorial limits set forth in the petitions coincided with the territorial plan as approved by the commissioner of education. § 122.20. The posted notices gave substantially the same information to the signers and to the residents who did not sign the petitions. There is no showing that any interested person was misled or deprived of essential information for an informed vote on the merits.
We have a further irregularity in that the notice calling for election was prematurely posted in violation of the statutory provision (§§ 122.20 and 122.21) that no election shall be callable until after the proper petitions have been presented to the county superintendent. *352 The petitions were not presented until April 8, 1952, and therefore the notice of election should not have been posted or published prior to that date. The notice of the election was posted, however, on April 1, 2, and 3, and published on April 3. The election took place on April 15. Although the required statutory ten days' advance notice was given it was given prematurely. The irregularity was simply one of timing. The necessary steps were taken but their sequence was not proper. We do not here have an irregularity which involves a basic invalidity of the petitions themselves as in the Schweigert and Hamilton cases.[10] No one appears to have been misled by the premature posting or publication of the election notice.
3. Since the departure from the statutory procedure (1) by circulating the petitions before the plat had been approved by the state commissioner of education (§§ 122.19 and 122.20) and (2) by the premature posting and publishing of the notice of election prior to the presentation of the petitions to the county superintendent (§§ 122.20 and 122.21) involved no statutory provisions clearly and unequivocally prescribed as jurisdictional by the legislature, and since no voters were consequently misled or deprived of essential information whereby the results of the election were made uncertain or inaccurate as a free and fair expression of the popular will, such irregularities in complying with the statutory provisions did not invalidate the election.
We have not overlooked the contention that the petitions, the notices of election, and the order of consolidation are insufficient in their description of the territory affected. Unlike the petitions described in Peiper v. County Superintendent, 130 Minn. 54, 153 N.W. 112, the petitions, notices of election, and order herein all refer to each district by number, county, and state, and in addition refer interested persons to the plat if they desire further information. Furthermore, all petitions were accompanied by an attached sheet describing the partial districts in terms of townships, sections, quarters, and even acres. The posted notices referred to the plat. The published notice described entire and fractional school districts *353 merely by number. There was nothing to indicate whether the districts were common or independent but this seems of little consequence since no one could thereby have been misled. Although the notices and the order of consolidation were carelessly drawn, we cannot upon the record herein find that any deficiencies in the descriptions made the verdict at the polls uncertain.
We do not minimize the importance of insisting that an election law be observed in all its essentials. It is difficult to condone the failure to follow simple statutory steps or the failure to give reasonably complete descriptions of all territory affected in both posted and published notices. Where there is a showing that such errors have in fact misled the voters and made an election uncertain or inaccurate as a fair and free expression of the popular will, the consequences can indeed be serious where school authorities have invested public funds or have otherwise acted in reliance upon the validity of such an election.
4. We find no defect in the petition for District No. 41. Apparently four of the signers were unable to be present when the petition was acknowledged, and their acknowledgments were later recorded on a second sheet. Since § 122.20 merely requires that the petitioners sign and acknowledge their signatures, the acknowledgment need not be taken at the time of signing but may be taken at any time before the petition is filed or is otherwise used as a basis for subsequent proceedings. Certificates of acknowledgment should be liberally construed to accomplish their purpose. Bennett v. Knowles, 66 Minn. 4, 68 N.W. 111. An acknowledgment may be made either upon the petition itself or upon a certificate of acknowledgment which is attached to the petition. See, Bennett v. Knowles, supra.
5. Appellant finally contends that the acknowledgments of some of the petitioners are invalid because the notary did not ask them if they signed the instrument as their own free act and deed. In Bennett v. Knowles we pointed out that there are two essential elements to a valid certificate of acknowledgment  (1) identity of the party executing the instrument, and (2) his admission that he executed it. Here the notary testified that she knew each of the petitioners *354 personally as resident freeholders. In other words the element of identity was clearly supplied. It also appears that each petitioner signed the petition before and in the immediate presence of the notary, which act, when coupled with the presumption that arises from the terms of the executed written acknowledgment itself, is sufficient for the purposes of § 122.20 to establish the execution of the petition as the free act and deed of each of the signers. See, Brunswick-Balke-Collender Co. v. Brackett, 37 Minn. 58, 33 N.W. 214; 1 Dunnell, Dig. (3 ed.) § 78; Hoboken Land & Improvement Co. v. Kerrigan, 31 N.J. Law 13.
The judgment of the trial court is affirmed.
Affirmed.
NOTES
[1] Reported in 65 N.W. (2d) 198.
[2] See, Schweigert v. Abbott, 122 Minn. 383, 388, 142 N.W. 723, 725.
[3] See, 2 Cooley, Constitutional Limitations (8 ed.) p. 1396.
[4] See, 18 Am. Jur., Elections, § 206; Ferguson v. City of Morris, 197 Minn. 446, 267 N.W. 264.
[5] See, State ex rel. Maffett v. Turnbull, 212 Minn. 382, 385, 3 N.W. (2d) 674, 676; 18 Am. Jur., Elections, § 206; 90 A.S.R. 72.
[6] Taylor v. Taylor, 10 Minn. 81 (107); McEwen v. Prince, 125 Minn. 417, 147 N.W. 275; Schweigert v. Abbott, 122 Minn. 383, 142 N.W. 723; Clayton v. Prince, 129 Minn. 118, 151 N.W. 911; Ferguson v. City of Morris, 197 Minn. 446, 267 N.W. 264; 6 Dunnell, Dig. (3 ed.) § 2960; In re Special Election in School Dist. No. 68, 183 Minn. 542, 237 N.W. 412.
[7] In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 42 N.W. (2d) 393; State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N.W. (2d) 130; In re Order of County Superintendent of Schools, Nobles County, 239 Minn. 233, 239, 58 N.W. (2d) 465, 469; In re Dissolution of School Dist. No. 33, Mille Lacs County, 239 Minn. 439, 448, 60 N.W. (2d) 60, 66; State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, 240 Minn. 335, 61 N.W. (2d) 410; State ex rel. Burnquist v. Independent Consol. School Dist. No. 46, 242 Minn. 320, 65 N.W. (2d) 117; see, Schweigert v. Abbott, 122 Minn. 383, 142 N.W. 723.
[8] Hagen v. Consolidated School Dist. No. 111-74, 156 Minn. 268, 194 N.W. 756; In re Special Election in School Dist. No. 68, Faribault County, 183 Minn. 542, 237 N.W. 412; see, Ferguson v. City of Morris, 197 Minn. 446, 267 N.W. 264.
[9] See, §§ 122.19 and 122.20; Schweigert v. Abbott, 122 Minn. 383, 388, 142 N.W. 723, 725.
[10] Schweigert v. Abbott, 122 Minn. 383, 142 N.W. 723; Hamilton v. Village of Detroit, 85 Minn. 83, 88 N.W. 419.