In the Matter of the CONTEST OF SCHOOL DISTRICT ELECTION HELD ON MAY 17, 1988 for the purpose of considering a proposed bond issue.

Robert STARR, et al.,
Contestants, Appellants,

v.

Thomas GROSS, et al.,
Contestees, Respondents.

No. C9–88–1357.

Court of Appeals of Minnesota.

Nov. 29, 1988.

Review Denied Jan. 26, 1989.

912

Alan W. Weinblatt, Weinblatt and Davis, St. Paul, for appellants.

James Knutson, Thomas S. Deans, Knutson, Flynn, Hetland & Deans, St. Paul, for respondents.

Heard, considered and decided by NORTON, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from the trial court's dismissal of a notice of contest of a school board special election, in which twenty-nine "questionable" absentee ballots were decisive. We affirm.

## FACTS

On May 17, 1988, an election was held in Independent School District No. 637, Redwood Falls, Minnesota, in which the voters were asked whether the district should borrow $13,997,000 for the acquisition and betterment of school facilities. The clerk of the school board delivered an absentee ballot, a ballot envelope, a return envelope, and an instruction sheet with attached voter's certificate to each applicant for such ballot. The instruction sheet contained instructions identical to those set forth in chapter 123, which reads:

1. Mark your ballot in the usual manner making certain that no one observes how you vote.

2. Enclose ballot in 'ballot envelope' and seal. Do not make any marks on ballot envelope.

3. Place sealed 'ballot envelope' in regular mailing envelope furnished to you.

4. Execute certificate on bottom of this sheet and enclose with 'ballot envelope' in regular envelope and mail not later than one day before the election. If your ballot is received by the clerk after the close of the polls, it will not be counted.

Minn.Stat. § 123.32, subd. 24(d) (1986).

A total of 112 absentee ballots were cast in the school district election. The election judges correctly and accurately counted all of the ballots cast and submitted the "Official Returns of Judges" which certified the vote as follows:

| | |
|---|---|
| Yes votes (in favor) | 1,486 |
| No votes (opposed) | 1,487 |
| Questionable | 29 |
| Blank or spoiled | 4 |

The twenty-nine "questionable" ballots were all absentee ballots, determined to be questionable because the voter's certificate was not found inside the brown mailing

envelope and outside of the white "ballot envelope" as per the instructions.

Believing the absentee voters had mistakenly inserted the voter certificate in the ballot envelope, the election judges opened three ballot envelopes to ascertain whether the voter certificate was inside and did find the certificate in each ballot envelope. The judges removed each certificate, compared the signature on the certificate with that on the absentee voter application and, without scrutinizing the ballot, resealed the ballot envelope with the ballot inside. The three absentee ballot envelopes, as well as the other twenty-six untouched absentee ballot envelopes, were placed aside for later consideration by the canvassing board.

The counted ballots, returns, and uncounted absentee ballots were secured in the ballot boxes which were locked and taped to prevent tampering. The election judges also signed across the tape to further guard against tampering. The locked and taped ballot boxes were then taken by the clerk of the School Board and an election judge to the county recorder for placement in the vault at the Redwood County Courthouse for safekeeping.

On May 18, 1988, legal counsel for Independent School District No. 637, held two telephone conversations with an official of the Election Division of the Secretary of State's Office regarding the twenty-nine uncounted absentee ballots. In the first conversation, counsel outlined the facts relating to those uncounted ballots and reviewed proposed absentee ballot counting procedures with the official. In the second conversation, the official stated that he had reviewed the facts with another employee of the Secretary of State's Office, and that while the Secretary of State's Office had no jurisdiction over school district elections held prior to July 1, 1988, they were of the opinion that if they were the School Board, they would not count the twenty-nine questionable absentee ballots.

The Secretary of State's Office, however, stated that while they would not make a recommendation on the use of the proposed absentee ballot counting procedures, they believed the procedures were "as fair as possible under the circumstances and they could not think of a more appropriate way to count those ballots."

On May 19, 1988, the School Board held a public school board meeting as a canvassing board, at which time the chair of the board announced that only the School Board members and the Board's attorney would be permitted to speak. The Board then adopted a resolution approving the proposed absentee ballot counting procedures. In accordance with those procedures, the election judges publicly opened and counted the twenty-nine absentee ballots previously certified as "questionable" by the election judges.

In counting the twenty-nine absentee ballots in question, the election judges determined that three were spoiled because one certificate was not signed, and on the other two, the signatures did not match the signatures on the applications.

The election judges then determined that the questionable absentee ballots were cast as follows:

| | |
|---|---|
| Yes votes (in favor) | 16 |
| No votes (opposed) | 10 |
| Spoiled | 3 |

The School Board, acting as the canvassing board, immediately adopted the resolution "Canvassing Returns of Votes on Special School Election" and determined that the ballots were cast as follows:

| | |
|---|---|
| Yes votes (in favor) | 1502 |
| No votes (opposed) | 1497 |
| Blank or spoiled | 7 |

thus determining the special election bond issue had passed instead of being rejected.

Appellants (contestants), qualified voters in District No. 637, filed a summons and notice of contest challenging the validity of the twenty-six disputed ballots, naming as contestees the clerk of the school district, the chair of the School Board, and the superintendent of schools in District No. 637. These contestees moved for dismissal on the grounds the school board had not been made a party, in violation of Minn.R. Civ.P. 19.01.

The trial court dismissed the notice of contest, finding that there was substantial compliance by the twenty-six voters with "ambiguous and vague" requirements in Minn.Stat. § 123.32 (1986).

## ISSUE

Is an absentee ballot, in which the voter places the signed voter's certificate in the sealed inner ballot envelope, valid under Minn.Stat. § 123.32, subd. 24 (1986) where the voter otherwise complies with the statute and the election judges make special efforts to preserve the integrity of the election process?

## ANALYSIS

As of July 1, 1988, the general election law applies to all elections held in Minnesota, unless otherwise specifically provided by law. 1987 Minn.Laws ch. 266, art. I, § 2. Under this law the form of the absentee voter's certificate is such that the irregularities found in this case may be avoided. *See* Minn.Stat. § 203B.07, subd. 2 (1986) (a certificate of eligibility to vote by absentee ballot shall be printed on the back of the return envelope).

This case, however, must be decided according to the laws in effect at the time of the election, namely Minn.Stat. § 123.32, subd. 24 (1986). The contestants claim the procedures in this subdivision of the statute are conditions precedent for voting by absentee ballot, and that the ballots must not be counted by the election judges unless, without opening the ballot envelope, they can first compare the signature on the certificate with that on the voter's application for an absentee ballot. Contestants argue this procedure is required because the secrecy of the ballot is lost when the voter's certificate is taken out of the sealed ballot envelope, and the opportunity for fraud and collusion between the voter and a dishonest election judge is increased. Contestants contend the twenty-six disputed ballots were invalid, basing their contention on this statutory language:

Before opening the ballot boxes, the judges shall inspect the regular envelopes to ascertain that they were properly mailed and then open the regular envelopes and compare the signature on the certificate contained in the envelope with the signature as it appears on the application for absentee ballot. Having satisfied themselves that the vote should be allowed, one of the judges shall write the word "received" and initial the "ballot envelope" and deposit the unopened "ballot envelope" in a separate absentees ballot box.

Minn.Stat. § 123.32, subd. 24(f) (1986).

In addition, contestants contend the statutory absentee voter instructions are neither vague nor ambiguous, have been used in numerous past elections, and in fact, in this election, 83 out of 112 absentee voters properly followed the printed instructions.

The trial court held that the statutory instructions were "vague and open to misrepresentation by the voter," but, despite this, the ballots were all returned to the clerk of the school district on time; the signature on each of the certificates was duly compared with the signature on the voter's application for an absentee ballot; where the signatures conformed, the ballots were received; and no identifying marks were put on the ballots which would have invalidated them. Therefore, the court concluded there was substantial compliance with the statute despite the procedural irregularity in mailing the ballots and certificates together in the same inner envelope.

The question here is whether the evidence sustains the trial court's finding that the irregularities in the absentee voting procedures neither invalidated the ballots nor compromised the general public's right to a free election.

It is within the peculiar province of the trial court to

draw reasonable inferences from the evidence before it, even though such evidence may consist of ballots and other

written evidence, and the findings and conclusions drawn by the court below must be sustained if they are such that reasonable minds might draw such inferences and make such findings.

*Pye v. Hanzel,* 200 Minn. 135, 137–38, 273 N.W. 611, 613 (1937).

█ We agree with the trial court that the twenty-six irregular absentee ballots could be validly counted because the absentee voters substantially complied with the balloting procedures under Minn.Stat. § 123.32 (1986), and the care taken by the election judges in handling the twenty-nine "questionable" absentee ballots preserved the integrity of the election process.

█ The purpose and intent behind absentee voting legislation is the preservation of the enfranchisement of qualified voters, the preservation of the secrecy of the ballot, the prevention of fraud, and the achievement of a reasonably prompt determination of the election result. *Bell v. Gannaway,* 303 Minn. 346, 353, 227 N.W. 2d 797, 802 (1975). As a general rule, as long as there is substantial compliance with the laws, and no showing of fraud or bad faith, the true result of an election should not be defeated by an innocent failure to comply strictly with the statute. *Andersen v. Donovan,* 264 Minn. 257, 267, 119 N.W.2d 1, 8 (1962); *Kerrigan v. Vetsch,* 245 Minn. 229, 238, 71 N.W.2d 652, 658 (1955). Therefore, "mere irregularities in following statutory procedure will often be overlooked." *Andersen,* 264 Minn. at 267, 119 N.W.2d at 8 (footnote omitted). An election that has resulted in a fair and free expression of the will of legal voters will not be invalidated because of a departure from the statutory regulations governing the conduct of the election, "except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite." *Id.* at 268–69, 119 N.W.2d at 9 (quoting *Erickson v. Sammons,* 242 Minn. 345, 350, 65 N.W.2d 198, 202 (1954)).

The school district election laws do not contain specific language making the insertion of the ballot envelope and voter certificate in the mailing envelope a condition precedent to the counting of the ballot. *See* Minn.Stat. § 123.32 (1986). The voting instructions listed in the statute are merely directory.

█ There are some mandatory requirements, however. Absentee voters must file a verified application for a ballot with the city clerk prior to the election, *Wichelmann v. City of Glencoe,* 200 Minn. 62, 67, 273 N.W. 638, 640 (1937), and absentee voters must sign the voter's certificate. *Bell,* 303 Minn. at 355, 227 N.W.2d at 804. These statutory requirements are mandatory because they concern a voter's affidavit of residence and eligibility to vote, and are designed to ensure that only properly qualified voters will exercise the privilege of absentee voting. The signatures required on the application and voter certificate are little different than the oath required of people voting in person, whose voting qualifications are in doubt. *Id.* at 355–56, 227 N.W.2d at 804.

The absentee voters in this election signed both the application and voter certificate as required and returned ballot and certificate to the clerk. Only the secret reading and recording of the voters'. choices was jeopardized by the voters' erroneous placement of the white certificate in the same inner envelope as the yellow general election ballot and the blue special election ballot.

The election judges themselves conscientiously followed the instructions in Minn. Stat. § 123.32, subd. 24(f), and when they found mailing envelopes without voter certificates, they set the envelopes aside, rather than immediately marking the ballots "received." Later, under special procedures adopted by the School Board, the ballots were opened one by one, and without looking at the ballots, the judges removed the white voter certificates found inside the ballot envelopes. The ballots were then placed in the ballot box, mixed twice, and counted. In the three cases in which a validly executed certificate did not

exist with which to compare the voter's application for a ballot, or where the signatures on the two forms did not match, the election judges did not count the ballots.

We find these twenty-six absentee voters to be in substantial compliance with the statutory election laws. In addition, the school district made a good-faith effort to preserve the secrecy of the irregular ballots and the fairness of the election. The trial court did not err in dismissing the notice of contest.

As to the argument that the School Board was not properly joined as a necessary and indispensable party to the action, we first examine the joinder rules.

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Minn.R.Civ.P. 19.01.

Contestees argue that the parties served with notice in this case do not constitute a majority of the School Board, nor do they have authority to bind the Board.

The trial court stated in its memorandum that Minn.Stat. § 123.32, subd. 25 provides for service of a notice of contest in a school district election upon the clerk of the school district. The court pointed out that "[t]he designated person named for service of process does not make that designated person a party, nor on the other hand does a necessary party in all cases have to receive service to have service completed on that party."

■ The trial court was correct. Service of process on the clerk of the school district was service on the School Board.

## DECISION

The integrity of the school district election process was preserved despite irregularities in the completion of twenty-nine absentee ballots.

AFFIRMED.